[Crim. No. 885. Fifth Dist. Apr. 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT F. AGUILAR, Defendant and Appellant.

## COUNSEL

Eugene A. Biglow, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Arnold O. Overoye and Frank A. Iwama, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE, P. J.**—Defendant appeals from a conviction following a grand jury indictment charging him with three counts of selling heroin in violation of Health and Safety Code section 11501. The heroin was sold to undercover agent Allen.

The modus operandi in each instance was a "strip search" of Allen by police officers before he left headquarters to contact defendant; then Officer Bain, who was present at each search, accompanied Allen to a point near the place of purchase, but remained out of sight in an unmarked police car parked on a parking lot. Two other officers, equipped with binoculars and two-way radios, stationed themselves in the locality where the contacts were to be made; Officer Trejo observed two of the sales from an upstairs window of a hotel across the street, and in the third instance Officer Ortiz followed Allen and observed him make the purchase from defendant. The two officers kept in touch with Bain at the police car. After making each purchase, Allen placed in his mouth the balloon handed to him by defendant, then returned to the police car and delivered the contraband to Officer Bain. After each transaction, Officer Bain

radioed the other officers that Allen had "scored" and told them the color of the balloon.

After each sale, Bain took the balloon Allen delivered to him, to police headquarters and there removed a small portion of the contents, made a quick test, rerolled the balloon and placed it in an envelope upon which he made identifying notations. The sealed envelopes were placed in a police locker designed for the safekeeping of evidence. A few days after placing each envelope in his evidence locker at headquarters, Officer Bain, as he found time, took the envelopes to the State Building a block or so away, and placed each one in a depository maintained for that purpose by the State Narcotic Bureau. Only two chemists had keys to the depository. A chemist removed the envelopes and tested the contents of the balloons, which were then replaced in the envelopes and deposited in an evidence vault.

Officer Bain died before trial, and defense counsel objected to the admission in evidence of Bain's notations on the face of each envelope containing the balloons of contraband. There is corroborating testimonial evidence as to Bain's actions in each step of the "chain of possession" except for Bain's obtaining the envelopes from the police evidence locker and transporting them to the State Building and placing them in the chemists' depository. It is defendant's contention that this hiatus in the proof of chain of possession cannot be remedied by evidence of Bain's notations on each envelope.

The trial court admitted the evidence under the business records exception to the hearsay rule, as defined in Evidence Code sections 1270, 1271 and 1280. Defendant asserts that despite the Evidence Code, such hearsay evidence violated his Sixth Amendment constitutional right of confrontation. (*Douglas* v. *Alabama,* 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074]; *Pointer* v. *Texas,* 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065].) Since defendant was indicted by the grand jury, he had no opportunity to confront Bain as he would have had under the criminal complaint—preliminary hearing route. (Cf. *California* v. *Green,* 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930].)

■ The right of confrontation, under *Douglas* and *Pointer,* is not absolute; it does not preclude the introduction of any and all hearsay evidence in a criminal trial. The United States Supreme Court noted, in *California* v. *Green, supra,* at page 156 [26 L.Ed.2d at pp. 495-496], that "merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." (See also *Pointer* v. *Texas, supra; Dutton* v. *Evans,* 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210, 215].)

The California Supreme Court also has recognized that certain kinds of hearsay may be received in evidence without violating the right of confrontation. (*People* v. *Spencer,* 71 Cal.2d 933, 947 [80 Cal.Rptr. 99, 458 P.2d 43]; *People* v. *Brawley,* 1 Cal.3d 277 [82 Cal.Rptr. 161, 461 P.2d 361].) In *Brawley* we find the following at page 290: "It has similarly been recognized that certain other exceptions to the hearsay rule do not violate the Sixth Amendment right of confrontation. (*Tomlin* v. *Beto,* 377 F.2d 276, 277 (official records); *McDaniel* v. *United States,* 343 F.2d 785, 789 (cert. den. 382 U.S. 826 [15 L.Ed.2d 71, 86 S.Ct. 59]) (official records); *Mattox* v. *United States,* 156 U.S. 237, 240-244 [39 L.Ed. 409, 410-411, 15 S.Ct. 337] (testimony of deceased witness who has testified at former trial); see *Pointer* v. *Texas, supra,* 380 U.S. 400, 407 [13 L.Ed.2d 923, 928] (dying declarations and testimony of deceased witness who has testified at a former trial); 5 Wigmore, Evidence (3d ed. 1940) pp. 127-135; McCormick on Evidence (1954) pp. 486-487.)"

Although *Brawley* does not mention business records as defined in Evidence Code sections 1270, 1271 and 1280, the list was not intended to be exclusive, merely paradigmatic. ■ Whether a particular business record is admissible as an exception to the hearsay rule in a criminal trial depends upon the "trustworthiness" of such evidence, a determination that must be made, case by case, from the circumstances surrounding the making of the record. (*Dutton* v. *Evans, supra;* see Cal. Law Revision Com. Official Comments on Evid. Code (Aug. 1965 ed.) Hearsay Evid. pp. 1241-1244.)

■ The circumstances were that Officer Bain followed a practical procedure developed by the police, a procedure that has had to stand the scrutiny of defense counsel in the many narcotics cases that have been before the courts. The written record was made as part of a "governmental activity" (Evid. Code, § 1270); it was made "in the regular course of a business," "at or near the time of the act" and "the sources of information and method and time of preparation were such as to indicate its trustworthiness" within the ambit of Evidence Code section 1271, subdivisions (a), (b) and (d). The requirement under subdivision (c), that "The custodian or other qualified witness testifies as to its identity and the mode of its preparation," was supplied by an officer who identified the writing and initials of Officer Bain and testified to the procedure for handling narcotics seized as evidence. The record was made "within the scope of duty of a public employee" and "The sources of information and method and time of preparation were such as to indicate its trustworthiness" as required by Evidence Code section 1280.

We conclude that the court properly admitted the notations on the

envelopes as business records pursuant to Evidence Code sections 1270, 1271 and 1280, as an exception to the hearsay rule, further, that said exception did not violate defendant's Sixth Amendment rights.

■ Defendant's other point relates to the admission in evidence of Officer Bain's statements made by radio to the other officers who were observing the activities of Allen and defendant. Clearly, these statements, "Joe, it's a red balloon he scored from Huero" (nickname for defendant); "He scored from Huero. It's a red balloon"; and "He scored from Huero, it's a yellow balloon," are hearsay, as Bain did not witness any of the sales; he received his information from Allen. The court admitted the statements with the admonition to the jury that they were received "not for the truth of the statements but merely information upon which the police department acted."

To begin with, the hearsay statements appear to be irrelevant; no issue was raised as to the propriety of the conduct of Officers Trejo and Ortiz after the sales were made, and what Bain reported to them had no probative value. (See Evid. Code, § 352.) But defendant's point is that the hearsay statements bear directly upon the issue of his guilt, so that he was deprived of his Sixth Amendment right to confront Bain, the declarant. He argues that although the court instructed the jury to consider the statements as evidence concerning the fact of occurrence and not to consider the substance of the statements, the Supreme Court, in *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], held that such an instruction did not cure the error where hearsay was directly accusatory. At pages 523 to 527, the Supreme Court questioned whether jurors can compartmentalize hearsay evidence in accordance with a judge's instruction and, upon hearing a statement that would establish a defendant's guilt, if believed, separate the fact the statement was made, from the essence of the statement. (See *Bruton* v. *United States,* 391 U.S. 123, 129-137 [20 L.Ed.2d 476, 481-485, 88 S.Ct. 1620, 1624-1628].)

The argument is that the admission of the hearsay with a limiting instruction circumvented defendant's Sixth Amendment rights by a subterfuge, because the import of the evidence could have been given to the jury by testimony of what was done and not what was said. However, this case is not a suitable vehicle for exploring the interesting question raised, because of the factual posture in which the question arises. Although the officer whom Bain was addressing testified to the hearsay, undercover agent Allen also testified in court as to Bain's statements. Allen was the source of Bain's radioed statements and he was present when they were made. Thus Allen, the percipient witness who provided Bain with the information in the first place, was before the court and he was vigorously

cross-examined. In view of defendant's opportunity to confront the fountainhead of the evidence, his argument that had he been able to confront Bain he might have discredited Allen is too attenuated, in our opinion, to hold the error reversible. We are impelled to this view even though the hearsay evidence is alleged to impinge upon defendant's Sixth Amendment right of confrontation, from which it would follow that the standard for determining whether the error is of reversible dimensions is that defined in *Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (See *People* v. *Floyd*, 1 Cal.3d 694, 721 [83 Cal.Rptr. 608, 464 P.2d 64].)

The evidence of defendant's guilt is overwhelming, quite aside from the alleged error in admission of hearsay evidence, and in view of defendant's right to cross-examine Allen, the source of the hearsay, we believe that beyond a reasonable doubt the hearsay statements did not contribute to the verdict obtained.

The judgment is affirmed.

Gargano, J., and Brown (G. A.), J., concurred.