229 Cal.App.3d 930 (1991)
280 Cal. Rptr. 134
THE PEOPLE, Plaintiff and Respondent,
v.
TERRANCE LEWIS MATTHEWS, Defendant and Appellant.
Docket No. A046766.
Court of Appeals of California, First District, Division One.
April 15, 1991.
*932 COUNSEL
Terrance L. Matthews, in pro. per., Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, Peter R. Silten, Chief Deputy State Public Defender, and Louis Marinus Wijsen, Deputy State Public Defender, for Defendant and Appellant.
John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant *933 Attorney General, Morris Beatus, Herbert F. Wilkinson, Matthew P. Boyle and Ann Grogan, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[]]
OPINION
NEWSOM, Acting P.J.
Appellant was convicted of attempted robbery (Pen. Code, §§ 212.5, subd. (b), 664),[1] which was committed at the Empire Savings and Loan office (hereafter the bank) located at 1967 Market Street in San Francisco. At approximately 1 p.m., appellant entered the bank, approached teller Katy Chue with his hand in his coat pocket suggesting possession of a gun, and demanded money. Chue exclaimed, "Oh no. Not again" before retreating from her station to hide under a counter.
John Finn, who was then working at the next teller's window, asked appellant if he could help. Appellant replied: "Come on, give me the money." Fearing appellant might shoot, Finn stepped back behind a partition between the tellers' windows and told appellant he did not have any keys.
Charles Lamb, bank manager, was summoned to the scene. In response to Lamb's query, "Can I help you, sir?", appellant said, "I want the money," a demand he repeated several times, coupled with a threat to shoot Lamb. When Lamb also denied having keys, appellant finally ceased his demands for money and left the bank. While Lamb contacted the police, Finn pursued appellant briefly before losing sight of him.
San Francisco Police Officers Vellone and Ludlow received a report of an attempted robbery while they were on patrol nearby in an unmarked car. They observed appellant attempting to enter an apartment building shortly after hearing the police broadcast which included a description of the bank robber. Appellant matched the description and was apprehended after a scuffle which resulted in damage or loss to several of Officer Vellone's teeth. After being advised of his Miranda rights at the police station, appellant denied being near the bank and told officers that his name was Charles Murphy.
Appellant testified that he entered the bank to obtain money, but denied simulating possession of a gun or threatening bank employees. After his requests for money were denied, he left the bank. He proceeded to his sister's apartment complex, and was ringing the bell when two men approached. His response was to run until he saw his pursuers draw guns, *934 whereupon he stopped and was frisked. When one of the officers placed him in a painful choke-hold, he reared his head back, striking the officer's face. He was then thrown to the ground and beaten.
The arresting officers testified that, upon contacting appellant, they identified themselves as police officers. Appellant was impeached with three prior convictions.
Appellant was also charged with commission of five prior serious felonies (§§ 667 and 1192.7) and conviction of five felonies for which he had served prison terms (§ 667.5, subd. (b)). To prove a prior conviction for robbery dated April 24, 1984, the prosecution submitted the following documents: 1) a certified copy of a San Francisco Superior Court record which indicates that "Carl Tyrone Matthews" was convicted of robbery in case number 112983 on April 24, 1984, with sentence imposed on May 22, 1984 (exhibit 14); 2) a computer printout labeled "San Francisco Police Department Criminal History Record" for "Terry Matthews," showing an arrest for robbery on January 25, 1984, and sentencing for that offense on May 22, 1984; 3) an unlabeled computer printout with the name "Terry Matthews," among other aliases, listed at the top; and 4) a fingerprint card indicating an arrest of Terry Matthews on January 25, 1984. Over appellant's hearsay objection, exhibit 14 was properly admitted into evidence as an official record of the court. Exhibits 16 and 17 were admitted over hearsay and lack of foundation objections as business records, and are in dispute in this appeal.[2]
*935 To satisfy the foundational requirements for admission of exhibits 16 and 17, the state and local "rap sheets," respectively, as business records (Evid. Code, § 1271), the prosecution adduced testimony of John White, a fingerprint technician and custodian of records for the San Francisco Police Department Identification Bureau. White testified that he maintained custody of a "criminal jacket" which included the local and state rap sheets marked exhibits 16 and 17. He further testified: "Q. Now, is the information in the I.D. Jacket something that is made in the regular course of business of the identification bureau, sir?
"A. Yes, it is.
"Q. And is that ... an institution or is that a business of which you are a custodian of records in your official capacity?
"A. Yes.
"Q. Are the writings entered in the records contained in the I.D. Jacket, are they entered on the paper soon in time to the actual condition or event they are meant to memorialize or record?
"A. Yes they are.
"Q. And are you familiar, sir, with the manner in which information is gathered?
"A. Yes.
"Q. For the purpose of entering it and keeping it and in the jacket of a particular person, are you familiar with the mode of preparation?
"A. Yes."
The local and state rap sheets were then admitted as business records, followed by White's opinion that the notation "01/25/84 CAPDSAN FRANCISCO 326095, 01:211 PC-Robbery [¶] 05-22-84 CASCSAN FRANCISCO CO 112983 01:211 PC-ROBBERY [¶] [*]DISPO: CONVICTED-PROBATION" referred to an arrest date of January 25, 1984, in case number 112983, which matched the case number on exhibit 14, showing a conviction of Carl Tyrone Matthews for robbery on April 24, 1984.
The prosecutor also referred White to a fingerprint card, marked as exhibit 18, which White identified as "an original ten print card of [appellant] reflecting certain dates upon which he was processed in this building." *936 The card had the date January 25, 1984, stamped on one of the fingerprints, which White stated was an arrest date corresponding to the date noted for an arrest for robbery of Terry Matthews on the state rap sheet. White made no fingerprint comparison between this card and one bearing appellant's fingerprints taken that day in court.
The court found that appellant had been twice convicted of a "serious" felony (robbery), and that appellant had been previously convicted of a felony (sale of narcotics) that resulted in a prior prison term. Appellant was sentenced to the upper term of three years for the attempted robbery, to consecutive five-year terms for each of the two serious felonies, and to an additional consecutive one-year term for the narcotics conviction that had resulted in a prior prison term, for a total of fourteen years.
(1a) Following our Wende[3] review, we have raised the issue of the admissibility of the state and local rap sheets to prove appellant's 1984 robbery conviction, which resulted in a five-year enhancement to his sentence. The rap sheets were admitted by the trial court under the business records exception to the hearsay rule. We find other considerations also pertinent in determining the admissibility of the rap sheets to prove the prior conviction.
Our high court has declared that the trier of fact may "look to the entire record of the conviction to determine the substance of a prior foreign conviction." (People v. Guerrero (1988) 44 Cal.3d 343, 355 [243 Cal. Rptr. 688, 748 P.2d 1150]; see also People v. Goodner (1990) 226 Cal. App.3d 609, 614 [276 Cal. Rptr. 542]; People v. Garcia (1989) 216 Cal. App.3d 233, 236 [264 Cal. Rptr. 662].) "[T]he `entire record of conviction' includes all relevant documents in the court file of the prior conviction." (People v. Castellanos (1990) 219 Cal. App.3d 1163, 1172 [269 Cal. Rptr. 93].) The court in Guerrero did not resolve which items are included within the entire "record of conviction ... and for what purpose or whether on the peculiar facts of an individual case the application of the rule set forth herein might violate the constitutional rights of a criminal defendant." (Guerrero, supra, 44 Cal.3d at p. 356, fn. 1; People v. Johnson (1989) 208 Cal. App.3d 19, 27 [256 Cal. Rptr. 16]; People v. Smith (1988) 206 Cal. App.3d 340, 343 [253 Cal. Rptr. 522].) (2) But, Guerrero clearly established the rule that the People are precluded from relitigating the circumstances of a past offense "`by introducing evidence outside the record. [Citation.]' (Id. at p. 344, fn. 6.)" (People v. Castellanos, supra, 219 Cal. App.3d 1163, 1171.) "The proof of the prior conviction is limited to `the entire record of the conviction.' *937 [Citation.]" (People v. Guzman (1990) 225 Cal. App.3d 1302, 1310 [275 Cal. Rptr. 856].)
(1b) The state and local rap sheets used to prove appellant's 1984 robbery conviction were not part of the record of conviction; those documents were merely used by the prison system for administrative or investigative purposes. (People v. Rhoden (1989) 216 Cal. App.3d 1242, 1257 [265 Cal. Rptr. 355].) Under Guerrero, exhibits 16 and 17 were not properly used to prove the details of appellant's prior convictions. (Ibid.)
Section 969b[4] specifically authorizes proof of the fact that the defendant suffered a prior conviction by evidence of certified prison records; it provides: "For the purpose of establishing prima facie evidence of the fact that a person being tried for a crime or public offense under the laws of this State has been convicted of an act punishable by imprisonment ... and has served a term therefor in any penal institution, ... the records or copies of records of any state penitentiary, reformatory, county jail ... in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence." (3a) Under section 969b, the People may satisfy the burden of proving a prior conviction by introducing into evidence a certified copy of a prison record. (People v. Thomas (1967) 65 Cal.2d 698, 706 [56 Cal. Rptr. 305, 423 P.2d 233]; People v. Bradley (1970) 3 Cal. App.3d 273, 276 [83 Cal. Rptr. 234]; People v. Beal (1951) 108 Cal. App.2d 200, 205 [239 P.2d 84].) Such records are hearsay but admissible under an exception to the hearsay rule without violating the defendant's constitutional right to confrontation. (People v. Lizarraga (1974) 43 Cal. App.3d 815, 820 [118 Cal. Rptr. 208]; People v. Bryan (1970) 3 Cal. App.3d 327, 345 [83 Cal. Rptr. 291]; People v. Purcell (1937) 22 Cal. App.2d 126, 132 [70 P.2d 706]).[5] Thus, section 969b supplements Guerrero by permitting properly certified prison records in addition to the "record of conviction" to be used to prove a prior conviction.
(1c) That the rap sheets are prison records within the meaning of section 969b is not subject to dispute. (Harris v. Alcoholic Bev. Con. Appeals *938 Bd. (1963) 212 Cal. App.2d 106, 121 [28 Cal. Rptr. 74].) The only issue to be considered is whether the proper certification for the records was provided by the testimony of John White, custodian of records for the San Francisco Police Department.
According to Evidence Code section 1530, subdivisions (a)(1) and (2), a purported copy of a writing of a public entity "is prima facie evidence of the existence and content of such writing" if the copy purports to be published by the authority of the public entity "and the copy is attested or certified as a correct copy of the writing ... by a public employee, or a deputy of a public employee, having the legal custody of the writing...." Evidence Code section 1531 further requires that "whenever a copy of a writing is attested or certified, the attestation or certificate must state in substance that the copy is a correct copy of the original, or of a specified part thereof, as the case may be." (3b) Section 969b does not require that each separate prison document be individually certified as long as the certification provided applies to all documents submitted to the court. (People v. Brucker (1983) 148 Cal. App.3d 230, 241 [195 Cal. Rptr. 808].)
(1d) Unlike some of the documents included within the "969b package" which were properly certified as official records by the appropriate legal custodian thereof (see exhibits 12-15, 18), the rap sheets (exhibits 16 and 17), submitted by the People as part of appellant's "criminal jacket," lack any certification, and are not included within materials otherwise certified. The rap sheets are nothing more than printed computer compilations, without official reference or attestation. (Cf. In re Egan (1944) 24 Cal.2d 323, 331 [149 P.2d 693]; People v. Domenico (1953) 121 Cal. App.2d 124, 130 [263 P.2d 122], disapproved on another ground in People v. Hall (1980) 28 Cal.3d 143, 156 [167 Cal. Rptr. 844, 616 P.2d 826]; People v. Beal, supra, 108 Cal. App.2d 200, 205; People v. Richardson (1946) 74 Cal. App.2d 528, 536 [169 P.2d 44].) John White testified as a fingerprint technician and "custodian of records" for the San Francisco Police Department that the rap sheets were "sometimes" found in the "criminal jacket" compiled in the regular course of business of the identification bureau of the police department. He was not identified as the legal custodian of the records, or even a deputy, so as to establish his authority to provide the requisite certification. (Cf. Whitson v. LaPay (1957) 153 Cal. App.2d 584, 589 [315 P.2d 45]; People v. Hagan (1954) 128 Cal. App.2d 491, 494 [275 P.2d 616]; People v. Santos (1940) 36 Cal. App.2d 599, 601 [97 P.2d 1050]; People v. Purcell, supra, 22 Cal. App.2d at p. 133.) More importantly, neither he nor anyone else attested that the rap sheets are correct copies of the originals, as Evidence Code section 1531 demands. Without any label, identification or attestation, we only know from the record that exhibits 16 and 17 are computer-generated lists of the dispositions of various arrests.
*939 Thus, we must conclude that the rap sheets were not properly certified for admission. (People v. Cuevas (1967) 250 Cal. App.2d 901, 909 [59 Cal. Rptr. 6]; Harris v. Alcoholic Bev. Con. Appeals Bd., supra, 212 Cal. App.2d 106, 121.) Without the proper certification, the records were not admissible under section 969b. (Ibid.)
The People contend that the rap sheets qualify for admission under the business records exception to the hearsay rule, codified in Evidence Code section 1271, which provides that a writing is not made inadmissible by the hearsay rule if it was "`... made in the regular course of a business; [¶] ... at or near the time of the act, condition or event; [¶] (c) the custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness.'" (People v. Maki (1985) 39 Cal.3d 707, 711 [217 Cal. Rptr. 676, 704 P.2d 743]; see also People v. Ferguson, supra, 129 Cal. App.3d 1014, 1024; People v. Williams (1973) 36 Cal. App.3d 262, 275 [111 Cal. Rptr. 378].) (4) "Whether a particular business record is admissible as an exception to the hearsay rule in a criminal trial depends upon the `trustworthiness' of such evidence, a determination that must be made, case by case, from the circumstances surrounding the making of the record. (Dutton v. Evans, supra; see Cal. Law Revision Com. Official Comments on Evid. Code (Aug. 1965 ed.) Hearsay Evid. pp. 1241-1244.)" (People v. Aguilar (1971) 16 Cal. App.3d 1001, 1005 [94 Cal. Rptr. 492].)
"The trial judge is invested with wide discretion in determining whether a proper foundation has been laid for the admission of business records under Evidence Code section 1271. (Levy-Zentner Co. v. Southern Pac. Transportation Co. (1977) 74 Cal. App.3d 762, 784 [142 Cal. Rptr. 1]; People v. Dorsey (1974) 43 Cal. App.3d 953, 961 [118 Cal. Rptr. 362]; Exclusive Florists, Inc. v. Kahn (1971) 17 Cal. App.3d 711, 715 [95 Cal. Rptr. 325].) The exercise of that discretion will not be disturbed on appeal absent a showing of abuse. (Exclusive Florists, supra, at p. 716.)" (County of Sonoma v. Grant W. (1986) 187 Cal. App.3d 1439, 1450 [232 Cal. Rptr. 471].)
(1e) White testified that the rap sheets were made during the regular course of business of the identification bureau, at or near the condition or event they were intended to memorialize. He further stated that he is familiar with the mode of preparation of the rap sheets. White neither explained the manner in which the computer lists are prepared nor identified the sources of information contained in the rap sheets  a critical deficiency in the foundational showing. The record does not indicate that White was responsible for compiling the information which appeared in the rap sheets. *940 Apparently, the computer-generated rap sheets were merely retrieved by White in his capacity as custodian of records.
(5) Evidence Code section 1271 does not require that the person who gathered the information contained in a record testify as custodian of that record. (Nichols v. McCoy (1952) 38 Cal.2d 447, 449 [240 P.2d 569]; County of Sonoma v. Grant W., supra, 187 Cal. App.3d 1439, 1451; People v. Crosslin (1967) 251 Cal. App.2d 968, 976 [60 Cal. Rptr. 309].) "It is the object of the business records statutes to eliminate the necessity of calling each witness, and to substitute the record of the transaction or event. It is not necessary that the person making the entry have personal knowledge of the transaction. [Citations.]" (Loper v. Morrison (1944) 23 Cal.2d 600, 608-609 [145 P.2d 1]; County of Sonoma v. Grant W., supra, at p. 1451.) (1f) Here, however, White neither compiled the information reflected in the rap sheets nor even described the mode of preparation of those records. Not only do the rap sheets lack certification, no testimony was adduced about how they were prepared or the sources of information used for the entries made. Had White identified the sources of information and the mode of preparation of the computer lists, the reliability and trustworthiness of the records would have been established. (Cf. People v. Lugashi (1988) 205 Cal. App.3d 632, 640 [252 Cal. Rptr. 434]; County of Sonoma v. Grant W., supra, 187 Cal. App.3d 1439, 1451; People v. Aguilar, supra, 16 Cal. App.3d 1001, 1005-1006; People v. Crosslin, supra, 251 Cal. App.2d 968, 976.) Without such testimony, the rap sheets cannot be admitted as business records due to lack of a proper foundation. (People v. Maki, supra, 39 Cal.3d 707, 711; Daniels v. Department of Motor Vehicles (1983) 33 Cal.3d 532, 537 [189 Cal. Rptr. 512, 658 P.2d 1313]; Taylor v. Centennial Bowl, Inc. (1966) 65 Cal.2d 114, 126 [52 Cal. Rptr. 561, 416 P.2d 793]; People v. Dasher (1988) 198 Cal. App.3d 28, 38 [243 Cal. Rptr. 486]; People v. Ferguson, supra, 129 Cal. App.3d 1014, 1024; MacLean v. City & County of S.F. (1957) 151 Cal. App.2d 133, 143[311 P.2d 158].)[6]
And in any event, without the necessary certification to admit the rap sheets as prison records under section 969b, we cannot depart from the rule that, other than certified prison records, only the "record of conviction" is admissible to prove a prior conviction. (People v. Guerrero, supra, 44 Cal.3d 343, 355; People v. Rhoden, supra, 216 Cal. App.3d 1242, 1257.) *941 Consequently, if the rap sheets cannot be admitted as certified prison records under section 969b, and they are not part of the "record of conviction" within the meaning of Guerrero, they are not admissible as business records or under any other exception to the hearsay rule to prove appellant's prior conviction. (Ibid.) For all these reasons, the trial court erred by admitting the state and local rap sheets as proof of appellant's 1984 robbery convictions.
Without the rap sheets, no evidence links the name "Carl Tyrone Matthews" listed in the certified court record (exhibit 14) as the person convicted of robbery on April 24, 1984, in case number 112983, with appellant Terrance Lewis Matthews. A fingerprint card for "Matthews, Terry" (exhibit 18) states an arrest date of January 25, 1984, but only the corresponding arrest date on the San Francisco Police Department rap sheet for "Terry Matthews" proves that appellant suffered a conviction of robbery on April 24, 1984. Thus, admission of the rap sheets was prejudicial to appellant. (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The remaining evidence is insufficient to prove beyond a reasonable doubt that appellant was convicted of robbery on April 24, 1984. (People v. Morton (1953) 41 Cal.2d 536, 540-541 [261 P.2d 523]; People v. Young (1987) 192 Cal. App.3d 812, 818 [237 Cal. Rptr. 703]; People v. Cuevas, supra, 250 Cal. App.2d 901, 909.) Accordingly, we will vacate the five-year enhancement for the prior robbery conviction. (People v. Brookins (1989) 215 Cal. App.3d 1297, 1309 [264 Cal. Rptr. 240].)[7]
.... .... .... .... .... .[*]
The judgment is modified by striking the enhancement for the prior conviction of robbery in 1984; in all other respects the judgment is affirmed.
Stein, J., and Dossee, J., concurred.
A petition for a rehearing was denied May 15, 1991.
NOTES
[] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] The following pertinent entry is made on exhibit 16, entitled the "San Francisco Police Department Criminal History Record" for Terry Matthews, who is identified by CII number A05918854:

"01/25/84 COURTNO: 00677041 RPTNO: STAR: 1580/0000
 ARREST LOCATION:8TH ST/MARKET ST
 Y08391 01/25/84 211 PC/F ROBBERY
 DISP: 05/22/84 SC CHG:211 PC/F PB:FO/003Y"

Exhibit 17 lists Terry Matthews as one name, with twelve others, including Carl T. Matthews, for the subject identified as CII number A05918854. One of the entries on exhibit 17 is the following:

"01-25-84 CAPDSAN FRANCISCO
 326095
 01 :211 PC-ROBBERY
05/22/84 CASCSAN FRANCISCO CO
 112983
 01: 211 PC-ROBBERY
 [*]DISPO: CONVICTED-PROBATION
 CONV STATUS: FELONY
 SEN: 003 years probation"

Exhibit 17 contains a number of aliases for Terry Matthews, including Carl T. Matthews, but not Carl Tyrone Matthews. No mention of this name as an alias was made during the testimony or argument. In fact, the prosecutor mistakenly introduced exhibit 14 as "a report, indeterminate sentence with respect to one Terry Matthews."
[3] People v. Wende (1979) 25 Cal.3d 436 [158 Cal. Rptr. 839, 600 P.2d 1071].
[4] Section 969b has not been cited by the parties on appeal as a basis for admission of the prison records, but the prosecutor referred to appellant's "969b package" at trial.
[5] Prison records are hearsay when offered to prove the truth of a prior conviction. (Evid. Code, § 1200; People v. Ferguson (1982) 129 Cal. App.3d 1014, 1024 [181 Cal. Rptr. 593].) Evidence Code section 1200 bars admission of hearsay evidence except as otherwise provided by law. (People v. Rubio (1977) 71 Cal. App.3d 757, 766 [139 Cal. Rptr. 750], disapproved on another ground in People v. Freeman (1978) 22 Cal.3d 434, 438-439 [149 Cal. Rptr. 396, 584 P.2d 533]; People v. Sundlee (1977) 70 Cal. App.3d 477, 482 [138 Cal. Rptr. 834].) Section 969b is a recognized statutory exception to the hearsay rule. (People v. Lizarraga, supra, 43 Cal. App.3d at p. 820.)
[6] We observe that the rap sheets are inadmissible as official records for the same reasons they are inadmissible as business records. Besides the absence of proper certification, the evidence fails to show the method of preparation or sources of the information contained in the rap sheets. (In re Shannon C. (1986) 179 Cal. App.3d 334, 343 [224 Cal. Rptr. 516].) Merely placing the information in the rap sheets does not overcome the hearsay rule without proper foundation for the records. (Behr v. County of Santa Cruz (1959) 172 Cal. App.2d 697, 706 [342 P.2d 987].) No other basis for admission of the hearsay evidence has been presented.
[7] The remaining issues were raised by appellant in his propria persona brief.
[*] See footnote, ante, page 930.