Filed 5/13/13

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D062125 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD232456) |
| ANGEL ZAVALA, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Honorable Michael T. Smyth, Judge.  Affirmed.


Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Gary W. Brozio, Deputy Attorneys General, for Plaintiff and Respondent.

This case presents a matter of first impression. Angel Zavala argues a computer printout produced by human query of a computer system that maintains cell phone data in the regular course of business does not fall within the business records exception under Evidence Code section 1271 to the general rule prohibiting hearsay evidence. Here, we hold a printed spreadsheet of call data produced for purposes of trial does fall within the business records exception where the underlying data is kept and maintained by a reliable computer program in the regular course of business and the other prongs of Evidence Code section 1271 are met.

A jury convicted Zavala of five counts of robbery (Pen. Code,[1] § 211) and one count of burglary (§ 459). As to each count of robbery, the jury found Zavala was a principal in the commission of the offenses and was vicariously liable within the meaning of section 12022, subdivision (a)(1). Zavala also admitted one prior prison term, an enhancement within the meaning of section 667, subdivision (a)(1) and section 668. The court denied probation and sentenced Zavala to 22 years eight months in state prison.

Zavala appeals, contending the trial court erred by admitting (1) Zavala's and Freddie Argallon's cell phone records and any testimony about the records, and (2) Detective Kevin Maxwell's testimony regarding the call log information seen on Zavala's cell phone. Zavala argues the cell phone records and Maxwell's testimony were hearsay and should have been excluded. We conclude the evidence of Zavala's and Argallon's cell phone records fell within the business records exception to the hearsay rule, and that

---

[1] Statutory references are to the Penal Code unless otherwise specified.

Maxwell's testimony was admitted for a proper and limited purpose. Accordingly, we affirm the judgment.

FACTS

Zavala and Argallon together committed three robberies. At trial, Maxwell testified regarding the ensuing investigation. Maxwell stated during Argallon's arrest, he seized Argallon's cell phone and discovered numerous phone calls that connected Argallon to the robberies. He also found several calls to Zavala. Later, Maxwell seized Zavala's cell phone and found Argallon's phone number on the call log and phone calls made to the locations where the robberies took place.

Cell Phone Record Evidence

Sprint records custodian Joseph Trawicki also testified during trial regarding Zavala's Sprint cell phone records. Trawicki stated he had worked for Sprint for eight and a half years as a custodian of records and was familiar with the way Sprint maintains its cell phone records, cell cite information, and text messaging records. Sprint uses a computer system that generates records of each phone call at the time it is made and then transmits the data to a call detail record archive. Trawicki testified that Sprint collects and maintains the call detail records of all its customers for billing purposes and keeps those records in the regular course of business.

Trawicki also described how he obtains those records in response to legal demands. When Sprint receives a search warrant or court order, the warrant or order is processed and evaluated for validity and then placed into a subpoena tracking system. A custodian or subpoena analyst then runs a query of the computer system that maintains

3

the call records, usually by entering a specific telephone number. Upon query, the computer system automatically transfers the data relating to that phone number from the call detail record archive into an excel spreadsheet. The custodian or subpoena analyst then "packages" the document by burning it onto a CD, emailing or faxing the document to the entity that requested it.

Elizabeth Faraimo, a customer operations manager at Cricket Communications, also testified at trial regarding Argallon's cell phone records. Like Sprint, Cricket uses a computer system that records phone call data at the time of the call on a database. That call data is kept in the regular course of business, and upon legal demand, the data is accessed and a record of that data is produced for trial.

DISCUSSION

I

*ADMISSION OF CELL PHONE RECORD EVIDENCE*

At trial, the court admitted Zavala's Sprint cell phone records and Argallon's Cricket cell phone records into evidence over hearsay objections by Zavala, finding the records fell within the business record exception to the hearsay rule under Evidence Code section 1271. Zavala challenges the court's admission because a human query was required to retrieve the information from the computer's detail record archive, and Zavala's and Argallon's call records were produced in the form of an excel spreadsheet.

A. Standard of Review

A trial judge is vested with wide discretion in determining whether a proper foundation has been laid for admission of business records under the business records

4

exception. (*County of Sonoma v. Grant W.* (1986) 187 Cal.App.3d 1439, 1450.) "Where the trial court has determined that the foundation laid was sufficient to support the introduction of evidence under the business records exception, and the record reasonably supports this determination, its conclusion is binding on the appellate court." (*Ibid.*) Determining whether a proper foundation has been laid for the admission of business records under Evidence Code section 1271 is within the trial court's discretion and "will not be disturbed on appeal absent a showing of abuse." (*County of Sonoma, supra,* at p. 1450.)

### B. The Business Records Exception

Evidence Code section 1271 provides that "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule" if it meets all of the following requirements: "(a) The writing was made in the regular course of a business; (b) The writing was made at or near the time of the act, condition, or event; (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

" 'Whether a particular business record is admissible as an exception to the hearsay rule . . . depends upon the "trustworthiness" of such evidence, a determination that must be made, case by case, from the circumstances surrounding the making of the record.' [Citations.]" (*People v. Matthews* (1991) 229 Cal.App.3d 930, 939.) "The foundation for admitting the record is properly laid if in the opinion of the court, the sources of

information, method, and time of preparation were such as to justify its admission."

(*People v. Williams* (1973) 36 Cal.App.3d 262, 275.)

C. Analysis

California cases have held generally that computer printouts are admissible when they fit within a hearsay exception as business records under Evidence Code section 1271. (*People v. Lugashi* (1988) 205 Cal.App.3d 632, 641-642.) However, there is no California case addressing the issue raised here: whether a computer printout of automatically generated and stored call data falls under the business records exception where the printout is produced by human query for use at trial. Courts in other jurisdictions have considered this issue, and the majority of them conclude a printed compilation of data produced by human query for use at trial falls under the business records exception provided the underlying data is kept by a reliable computer software program in the regular course of business.

The Sixth Circuit considered a hearsay objection to computer generated cell phone records in *United States v. Nixon* (2012) 694 F.3d 623, 633-635. There, the trial court admitted a printout of account information under the business records exception in Federal Rules of Evidence, rule 803(6)[2] where the information was stored in a computer database and a manager ran a query to create a spreadsheet for trial. (*Nixon*, *supra*, at

---

[2]     In regard to the issue presented here, the differences between the admission of evidence under California and federal law is insignificant. Both Evidence Code section 1271 and Federal Rules of Evidence, rule 803(6), define a business broadly and require the entry to be made in the regular course of business at or near the time the recorded event took place.

p. 633.)  The Sixth Circuit upheld the admission of the evidence, holding that while the record introduced at trial was not created until a person ran a query of the database, the printout was admissible under the business records exception because the electronic version of the underlying data was created and stored in the regular course of business. (*Id.* at pp. 634-635; see *U'Haul Intern., Inc. v. Lumbermens Mut. Cas. Co.* (9th Cir. 2009) 576 F.3d 1040, 1043 ["evidence that has been compiled from a computer database is also admissible as a business record, provided it meets the criteria of [Fed. Rules Evid.], [r]ule 803(6)"];*United States v. Fujii* (7th Cir. 2002) 301 F.3d 535, 539 ["Computer data compiled and presented in computer printouts prepared specifically for trial is admissible under [Fed. Rules Evid.], [r]ule 803(6), even though the *printouts* themselves are not kept in the ordinary course of business."]; *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.* (2nd Cir. 1994) 38 F.3d 627, 632 ["A business record may include data stored electronically on computers and later printed out for presentation in court, so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice."].)

The District of Columbia Court of Appeals in *Dutch v. United States* (2010) 997 A.2d 685, 690, likewise held the fact a computer system may not contain the actual document in the precise hard copy form in which the data is presented in court does not render the hard copy evidence inadmissible.  There, the court held that the detailed testimony about how the system functions to gather and store the data, together with testimony about how the data was collected, established how the records were created and what business purpose they served.  (*Id.* at p. 689.)  The court noted that "in an

7

increasingly technological world, courts would well nigh eviscerate the exception if they adopted a contrary policy." (*Id.* at p. 690.)

The court in *Commonwealth of Penn. v. McEnany* (1999) 732 A.2d 1263 also considered a similar issue to the one before us. The court held the act of translating the computer's information from binary files into English did not render a computer printout of call data inadmissible because the underlying data was systematically recorded. (*Id.* at p. 1273.) The court was unwilling to adopt a more narrow interpretation of the exception because then "otherwise trustworthy evidence would be excluded simply because it needed to be translated so as to be understandable by the finder of fact." (*Id.* at p. 1273, fn. 3.) The court reasoned such an interpretation would contradict the purpose of the business records exception to permit records to be admitted where the sources of the information, method, and time of preparation justify the records' admission. (*Ibid.*)

Here, we agree with the reasoning in the cases discussed above and conclude that a printed compilation of call data produced by human query for use at trial falls under the business records exception where the underlying data is automatically recorded and stored by a reliable computer program in the regular course of business. In this case, the printed excel spreadsheet produced at trial of the call data recorded by Sprint's and Cricket's computer systems fell within that exception.

The evidence at trial established the call data was automatically generated by Sprint's computer system at or near the time each call was made. On cross-examination Trawicki stated, "the switch or the -- which is basically a giant set of computers that processes hundreds of thousands of calls every hour, generates these logs at the time of

8

each call.  The log is generated at the time the call -- you either dial or the call comes into the network and your phone starts to ring."  Trawicki went on to state, "that information over the period of the next four to six hours is then dumped to a tape backup system and then further dumped into the call detail record archive, at which point we can then run a query against the archive and retrieve that information."  Similarly, Faraimo testified that calls on the Cricket system "are stored at or near the time of the event on a database, and then they are accessed per legal request."

Further, Trawicki and Faraimo were the custodians of the data produced by Sprint and Cricket respectively, and each provided ample testimony as to the mode of the preparation of the documents entered at trial.  Each testified as to the details of the call data recording systems and how and when the data was collected and stored.  Finally, Trawicki stated at trial that the computer records were maintained for billing purposes and had to be accurate as a method of reporting call activity, and Faraimo stated Cricket had an interest in maintaining accurate call records for legal purposes.  The trial court thus did not abuse its discretion in finding that sufficient foundation was laid to establish admissibility under the business records exception in Evidence Code section 1271.  That the documents ultimately entered in trial were necessarily produced by human query does not render the data inadmissible because the underlying data itself was not produced by human input, but rather, was recorded by the computer system itself each time a user made a call.

There is no merit to Zavala's argument that the computer printout is untrustworthy because it was produced in the form of an excel spreadsheet.  At trial, Trawicki explained

9

that generally, an excel spreadsheet can be manipulated. However, no evidence was introduced to show the printed excel spreadsheets introduced were themselves manipulated, inaccurate, or unreliable in any way. We thus conclude the admission of this evidence was not error, and it neither prejudiced defendant nor deprived him of a fair trial.

## II

### *ADMISSION OF DETECTIVE MAXWELL'S TESTIMONY*

Zavala also contends Maxwell's testimony at trial regarding the call log information seen on Zavala's cell phone should have been excluded because the statements were hearsay. Zavala argues that the trial court abused its discretion by admitting the testimony. We disagree.

### A. Standard of Review

As noted above, "an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the hearsay nature of the evidence in question [citations]." (*People v. Waidla* (2000) 22 Cal.4th 690, 725.) " 'A trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004.) Further, where the court offers the jury an instruction regarding how to use particular evidence, the jury is presumed to have followed the instruction to decide the matter impartially and solely on the evidence.

(*People v. Cline* (1998) 60 Cal.App.4th 1327, 1336 [jury presumed to understand and follow instructions].)

## B.  Detective Maxwell's Testimony

The Attorney General contends the testimony regarding the call records was not hearsay but rather the call records were nonassertive conduct admissible to prove the cell phone was an instrumentality in a criminal enterprise.  We need not consider that contention because, in this instance, the trial court admitted the testimony over the hearsay objection for the limited purpose of explaining Maxwell's investigative steps.  Additionally, the court instructed the jury that the testimony "may be considered by the jury to explain his investigation and how -- where it led him, if it led him to Mr. Zavala."  The court's decision to allow Maxwell's testimony while limiting the purpose of its use for the jury was not arbitrary because the testimony explained the detective's steps in his investigation.  The court was well within its bounds to admit the evidence for that purpose.  Thus, the trial court exercised proper discretion in making its ruling, and there has been no clear showing of abuse of discretion.

Because the court did not abuse its discretion in admitting the cell phone records and allowing Maxwell's testimony, we do not address whether there was otherwise insufficient evidence connecting Zavala to the robberies.

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.

12