Filed 6/21/13  P. v. Grayson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056648 |
| v. | (Super.Ct.No. FSB1200221) |
| ROBERT LOUIS GRAYSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Harry Zimmerman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

I

INTRODUCTION

Following a jury trial, defendant Robert Louis Grayson was convicted of first degree burglary, with the jury finding true the special allegation that a person not an

1

accomplice was present in the residence (Pen. Code, §§ 459, 667.5, subd. (c)).[1]  The trial

court found true defendant's prior serious felony conviction and prison prior allegations.

Defendant was sentenced to an aggregate term of 18 years in prison.

Defendant's appellate counsel has filed a *Wende* brief under *People v. Wende*

(1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a

statement of the case, a summary of the facts, and requesting this court to undertake a

review of the entire record.  This court offered defendant an opportunity to file a personal

supplemental brief, which he has not done.  We have concluded our independent review

of the record and find no arguable issues or errors.  The judgment is affirmed.

## II

## FACTUAL BACKGROUND

On January 13, 2012, around 9:00 a.m., Gilbert Acosta was awakened by a loud

bang.  Defendant broke into Acosta's home by breaking the front door jamb, using blunt

force.  Acosta saw a shadow pass by his slightly open bedroom door.  Acosta called out,

"Hey."  Defendant turned around, looked at Acosta, and said, "My bad.  Wrong house,"

and then quickly left without taking anything.  Acosta identified defendant in court and

testified he had seen defendant from a distance of four to 10 feet.

As defendant was backing out of Acosta's driveway, Acosta grabbed a bat and

stepped out on the porch.  Acosta wrote down the license plate number of the small,

white car defendant was driving.  There was another person in the car with defendant.

---

[1]  Unless otherwise noted, all statutory references are to the Penal Code.

Acosta gave the license plate number to the police when they arrived. The white car was registered to Darrell Fowler and Kadedra Fowler. Kadedra owned the car at the time of the burglary. Defendant lived with Betty Fowler, Betty's ex-husband, Darrell Fowler, and their daughter, Kadedra, with whom defendant had children. A police helicopter flew over the Fowler residence. Police saw the white car parked on the street in front and two men in the backyard. The residence was two and a half miles from Acosta's house.

Defendant and codefendant Jonathan Lee Goldman were detained at the residence. The police took Acosta to the residence and admonished him that defendant and Goldman might not be the offenders. Acosta identified defendant as the intruder but was unable to identify Goldman. Acosta recognized the white car at the residence as the car he saw defendant drive away in.

The police did not find any incriminating fingerprints at the crime scene. However, they did find latex gloves commonly used by burglars to avoid leaving fingerprints. Five latex gloves were also found in defendant's pocket after his arrest. In addition, "Kadedra" was tattooed on his left shoulder. A police forensic specialist found a shoe impression by the kicked-in front door. The shoe impression was consistent with the right shoe defendant was wearing when he was arrested.

Betty testified she had met Goldman through defendant and Kadedra. The morning of the burglary, Kadedra had gone to the store with Darrell in his truck. Defendant was home with Betty that morning, watching the children. Around 9:00 a.m., Betty heard a helicopter and then saw Goldman driving like crazy in Kadedra's white car. When he pulled up to the house, Betty yelled at him for being late. The police arrived

3

shortly after that. By the time Kadedra returned from the store, defendant had already been arrested and the police had left.

According to police testimony, Betty made statements to them inconsistent with her trial testimony. Betty told the police that during the morning of the burglary, Darryl called to tell her that he was sending defendant to pick her up to look at a home she and Darrell were considering purchasing. Defendant arrived in a white car at 9:17 a.m. Goldman was driving and defendant was a passenger. Betty also told the police that neither defendant nor Goldman had been there earlier that morning.

III

DISCUSSION

Defendant has proposed the following issues for our independent review.

(1) Whether denial of defendant's motion to suppress the in-field show-up constituted prejudicial error under *People v. Waidla* (2000) 22 Cal.4th 690, 730 and *People v. Nguyen* (1994) 23 Cal.App.4th 32, 39.

There is no basis for challenging the trial court's denial of defendant's motion to suppress the in-field showup, under *People v. Waidla, supra,* 22 Cal.4th at page 730 or *People v. Nguyen, supra,* 23 Cal.App.4th at page 39. Acosta's identification of defendant was reliable under the totality of the circumstances. During the in-field showup conducted shortly after the charged crime, a police officer told Acosta that, although defendant and Goldman had been detained, he should not infer from this that they had or had not committed the crime. The officer also told Acosta he was not obligated to identify anyone. The officer asked Acosta to identify similarities between the persons

4

detained and the persons who committed the crime. Acosta was told to tell the officer if either of the detained persons committed the crime. Acosta was first shown defendant. Acosta spontaneously said, "Yeah, that's him." Acosta then was shown Goldman but was unable to identify him. Based on the foregoing, we find there was substantial evidence to support the trial court finding that the in-field showup was properly conducted and was not unduly suggestive or coercive.

(2) Whether admission of evidence of the police dispatch call constituted prejudicial error under *People v. Brenn* (2007) 152 Cal.App.4th 166, 175 (*Brenn*) and *Davis v. Washington* (2006) 547 U.S. 813, 822 (*Davis*).

There is no basis for challenging the trial court's admission of evidence of the police dispatch call because the call was nontestimonial. Acosta testified he made the call right after defendant committed the crime and fled. Acosta immediately wrote down the license plate of the car and called the police. The primary purpose of the call was to assist the police with an ongoing emergency, primarily by assisting in apprehending the fleeing perpetrators of the crime. Acosta "'simply was not acting as a *witness;* [he] was not *testifying.* What [he] said was not "a weaker substitute for live testimony" at trial . . . ." (*Brenn, supra,* 152 Cal.App.4th at pp. 175-176, quoting *Davis, supra,* 547 U.S. at p. 828.)

(3) Whether admission of evidence of defendant's tattoos constituted prejudicial error under *People v. Partida* (2005) 37 Cal.4th 428, 439 and *Estelle v. McGuire* (1991) 502 U.S. 62, 70.

Police Officer Thomas, testified that he noticed the name, "Kadedra" tattooed on defendant's left shoulder. Thomas connected this name with the name of one of the registered owners of the car driven by the perpetrator. At trial, Thomas was shown a photograph of the tattoo and testified that it was the tattoo he had observed on defendant the day defendant was apprehended. The tattoo evidence was admissible under Evidence Code section 352, as sufficiently relevant and not unduly prejudicial. Admission of the tattoo evidence therefore did not violate defendant's due process rights.

(4) Whether the prosecutor prejudicially shifted the burden of proof during closing argument under *People v. Woods* (2006) 146 Cal.App.4th 106, 112 (*Woods*).

During the prosecutor's closing argument, defense counsel objected to the following statements on the ground the prosecutor was shifting the burden: "You know, as you're probably aware of, I'm not the only person who has subpoena power in the case. Defense counsel's got subpoena power. They can bring in whoever they want, just like I brought in people I wanted, the people that I felt I needed to make the case. Not everyone is going to testify that is remotely related to the case. So if other people are key, well, then, Ms. Higuera should have brought those people in."

The prosecutor did not prejudicially shift the burden of proof. As explained in *Woods, supra,* 146 Cal.App.4th at page 112: "A prosecutor may fairly comment on and argue any reasonable inferences from the evidence. [Citation.] Comments on the state of the evidence or on the defense's failure to call logical witnesses, introduce material evidence, or rebut the People's case are generally permissible. [Citation.] However, a prosecutor may not suggest that 'a defendant has a duty or burden to produce evidence, or

6

a duty or burden to prove his or her innocence.' [Citations.]" In the instant case, the prosecutor fairly commented on the state of the evidence and the defense's failure to call logical witnesses.

(5) Whether there was insufficient proof of defendant's prior convictions, because there was no fingerprint or comparison testimony implicating defendant (*People v. Matthews* (1991) 229 Cal.App.3d 930 (*Matthews*); § 969b).

The parties waived a jury trial on defendant's prior convictions. During the court trial on the priors, the prosecutor submitted the following evidence: (1) a certified rap sheet for defendant, indicating a May 14, 2009, conviction for assault with a firearm and violation of section 12021, with a 24-month prison sentence (§ 245, subd. (a)(2)) (exh. 60); (2) a certified prior packet for FSB901539, in defendant's name, corroborating the May 14, 2009, conviction, with a 24-month prison sentence (exh. 61); (3) a certified prior packet for FSB048568, in defendant's name, showing a conviction on June 1, 2005, for violating section 245, subdivision (a)(1), with a commitment to state prison for two years (exh. 62); (4) a certified prior packet for FSB051631, in defendant's name, shows a conviction for violating Health and Safety Code section 11350, subdivision (a), on October 28, 2005, with a two-year sentence (exh. 63); and (5) a certified 969b packet, in defendant's name, corroborating the May 14, 2009, June 1, 2005, and October 28, 2005, convictions (exh. 61).

Without specifying any grounds, defense counsel asserted that the packet was insufficient to prove defendant's prison priors. The trial court found beyond a reasonable doubt that the priors alleged in the information were true, but that the June 1, 2005, and

7

October 28, 2005, convictions were concurrent and therefore constituted one prior prison term. Under *Matthews, supra,* 229 Cal.App.3d 930 and section 969b, sufficient evidence was presented to establish defendant's prior convictions. Fingerprint and comparison testimony implicating defendant was not required. "[T]he trier of fact may 'look to the entire record of the conviction to determine the substance of a prior foreign conviction.' [Citations.] '[T]he "entire record of conviction" includes all relevant documents in the court file of the prior conviction.' [Citation.]" (*Matthews, supra,* 229 Cal.App.3d at p. 936.) Section 969b "specifically authorizes proof of the fact that the defendant suffered a prior conviction by evidence of certified prison records; . . . Under section 969b, the People may satisfy the burden of proving a prior conviction by introducing into evidence a certified copy of a prison record." (*Id.* at p. 937.)

(6) Whether the trial court erred in finding that defendant could be impeached with his prior convictions for violating section 245, subdivision (a)(1) and (a)(2) (*People v. Ledesma* (2006) 39 Cal.4th 641, 731 (*Ledesma*); *People v. Hinton* (2006) 37 Cal.4th 839, 888 (*Hinton*); *People v. Elwell* (1988) 206 Cal.App.3d 171, 177).

Over defendant's objection, the trial court granted the prosecution's motion in limine to impeach defendant with his prior felony convictions for violating section 245, subdivision (a)(1) and (2). Defense counsel argued that it would be prejudicial if he was impeached with these prior convictions because the jury would be judging him based on his past if he testified. The trial court noted that doing so was permissible to some degree and that evidence of his prior convictions was not unduly prejudicial because they were

8

recent and not similar to the charged offense, in that the issues were different than in the instant case. Defendant ultimately did not testify at trial.

"Defendant has failed to preserve this claim of error. It is well established that the denial of a motion to exclude impeachment evidence is not reviewable on appeal if the defendant subsequently declines to testify. (See *Luce v. United States* (1984) 469 U.S. 38 (*Luce* ) [denial of in limine motion to preclude impeachment of the defendant with a prior conviction is not reviewable on appeal if the defendant did not testify]; *People v. Collins* (1986) 42 Cal.3d 378, 383-388 (*Collins*) [prospectively adopting the *Luce* rule].)" (*Ledesma, supra,* 39 Cal.4th at p. 731.)

Furthermore, subject to the trial court's discretion under Evidence Code section 352, Proposition 8 "'authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty.'" (*Hinton, supra,* 37 Cal.4th at p. 888.) Defendant's convictions for assault with a firearm (§ 245, subd. (a)(2)) and assault with a dangerous weapon other than a firearm (§ 245, subd. (a)(1)) denote moral turpitude and were therefore admissible for impeachment. (*Hinton,* at p. 888.) Any objection that the priors should have been excluded as too similar to the charged crime is likewise without merit. "'While before passage of Proposition 8, past offenses similar or identical to the offense on trial were excluded, now the rule of exclusion on this ground is no longer inflexible.' [Citations.]" (*Ibid.*)

(7) Whether admission of Betty's hearsay statements as prior inconsistent statements constituted prejudicial error under *People v O'Quinn* (1980) 109 Cal.App.3d 219 (*O'Quinn*).

9

According to police testimony, Betty made statements to the police inconsistent with her trial testimony. Betty told the police that the morning of the burglary, Darrell called to tell her that he was sending defendant to pick her up to look at a prospective new home. Defendant arrived in a white car at 9:17 a.m. Goldman was driving and defendant was a passenger. According to Betty, neither defendant nor Goldman had been to Betty's home earlier that morning. Contrary to Betty's statements to the police, Betty testified that the morning of the burglary, defendant was home with Betty, watching the children. Around 9:00 a.m., Betty heard a helicopter and then saw Goldman driving like crazy in Kadedra's white car. When he pulled up to the house, Betty yelled at him for being late. The police arrived shortly after that.

Under Evidence Code section 1235, "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." "*Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement* [citation], . . ." (*O'Quinn, supra,* 109 Cal.App.3d at p. 225.) In the instant case, Betty's statements made to the police were inconsistent with her trial testimony and therefore were admissible under the Evidence Code section 1235 hearsay exception.

(8) Whether admission of evidence of only a portion of the jail recordings, instead of the entire recordings, constituted prejudicial error under Evidence Code section 356 and *People v. Stallworth* (2008) 164 Cal.App.4th 1079 (*Stallworth*).

10

Before the trial, outside the presence of the jury, the parties and the court discussed the prosecution's request to introduce evidence of a portion of a recorded jail call. Defense counsel objected to the evidence on the grounds of lack of foundation and based on the rule of completeness. Defense counsel complained that the call was being introduced piecemeal. Defense counsel argued that the defense should be permitted to introduce additional statements from the recording; specifically statements made at the beginning of the recording in which someone answered the telephone and had a conversation with defendant, during which defendant was asked if he was in trouble, and defendant said he was not and was innocent. Defense counsel argued the requested additional statements should have been included because they gave context to the subsequent conversation. The trial court disagreed because the additional statements were made by a female to defendant, before defendant's conversation with a male. The portion of the conversation provided to the jury was solely between defendant and the male. The trial court therefore found that the additional statements were not admissible under Evidence Code section 356 because the conversation with the female did not give context or meaning to defendant's conversation with the male.

There was no error in excluding the initial conversation between the female and defendant. Under Evidence Code section 356, when part of a conversation is given in evidence by one party, "the whole on the same subject may be inquired into by an adverse party; . . . and when a . . . conversation . . . is given in evidence, any other . . . conversation . . . is necessary to make it understood may also be given in evidence." (Evid. Code, § 356.) Here, the trial court reasonably redacted the initial conversation

11

between defendant and a female. Doing so did not prejudicially distort the subsequent conversation between defendant and a male or present a misleading or distorted version of the relevant events. The redaction also did not negatively impact defendant's credibility. (See *Stallworth, supra,* 164 Cal.App.4th at p. 1098.)

(9) Whether the trial court prejudicially erred in not giving CALCRIM No. 225, when the jury was instructed with CALCRIM Nos. 224 and 252.

CALCRIM No. 224 instructed the jury on finding guilt based on circumstantial evidence. CALCRIM No. 252 instructed on the need for the jury to find proof of the union, or joint operation, of act and wrongful intent. The instruction also specified whether the charged crimes required a finding of specific or general intent. CALCRIM No. 225, which was not given to the jury, instructs on reliance on circumstantial evidence to prove intent. The bench notes for CALCRIM No. 225 state: "The court has a **sua sponte** duty to instruct on how to evaluate circumstantial evidence if the prosecution substantially relies on circumstantial evidence to establish the element of a specific intent or a mental state. [Citation.] [¶] Give this instruction when the defendant's intent or mental state is the only element of the offense that rests substantially or entirely on circumstantial evidence. If other elements of the offense also rest substantially or entirely on circumstantial evidence, do not give this instruction. Give CALCRIM No. 224, *Circumstantial Evidence: Sufficiency of Evidence*. [Citations.]"

Defendant was charged with first degree burglary of residence while a person not an accomplice was present. (§§ 459, 667.5, subd. (c).) The elements of the crime of burglary are (1) unlawfully entering (2) a residence (3) with intent to commit a crime,

12

such as larceny or theft. (§ 459.) Here, CALCRIM No. 225 was inappropriate because defendant's intent or mental state was not the only element of the offense that rested substantially or entirely on circumstantial evidence. Other elements of the offense, such as identification of defendant and Goldman as the perpetrators, also rested substantially or entirely on circumstantial evidence. Defendant argued there was insufficient evidence that he was the perpetrator, because when Acosta observed the perpetrator, it was dark, Acosta only saw a glimpse of him through a crack in the door, Acosta only saw the perpetrator for a couple seconds, Acosta was under stress, and his description of the perpetrator was not detailed. Defense counsel asserted that Acosta had no idea of who broke into his home and the circumstantial evidence was insufficient to establish that defendant was the perpetrator.

(10) Whether the trial court erroneously denied defendant's motion to strike his Three Strikes prior conviction under *People v. Wallace* (2004) 33 Cal.4th 738, 753-754 (*Wallace*).

Defendant moved to have his prior strike conviction dismissed pursuant to section 1385. (*People v. Superior Court* (*Romero* ) (1996) 13 Cal.4th 497.) The trial court denied defendant's motion. The court concluded defendant was "the perfect example of why we have the Three Strikes law," because he had a juvenile felony finding for possession for sale; five violations of parole; two felony priors, including the felony conviction strike for violating sections 245, subdivision (a)(2), and 12021; and two misdemeanor priors. The court concluded defendant's criminal history reflected an unwillingness to follow the law. There was no abuse of discretion in denying defendant's

13

*Romero* motion.  The court provided a proper basis for not dismissing defendant's prior-strike-conviction allegation.  (*Wallace, supra,* 33 Cal.4th at p. 754.)

We have concluded our independent review of the record and find no arguable issues.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

14