Filed 9/22/20  P. v. Steen CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E073893 |
| v. | (Super.Ct.No. 16CR051367) |
| KARL N. STEEN, JR., | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Eric M. Nakata, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Karl N. Steen appeals following his conviction of attempted first degree murder (Pen. Code, §§ 664, 187, subd. (a)) of Cremale Herron (the victim). He contends the trial court abused its discretion and violated his rights to due process and equal protection by excluding evidence of his prepaid debit card records. He further challenges the denial of his counsel's request for a continuance and asserts ineffective assistance. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

### A. *The Prosecution's Case.*

In August 2016, defendant and the victim lived at the Auburn Apartments in Adelanto. The victim sold an Xbox video game system to defendant, who paid $200 upfront and owed an additional $35 to the victim by the end of the week. On August 21, 2016, shortly after midnight, the victim left his apartment and encountered defendant in the parking lot. Defendant asked the victim where he was from, i.e., what gang he belonged to. The victim said he used to be with "Five Time," but he did not "bang no more." Defendant said, "F your dead homies and your family and everything you stand for and the $35 I owe you. You can chalk that up and give me everything in your pockets." Defendant held a handgun tucked into his waistband. The victim took out his wallet to show that it was empty and, when asked what was in his other pocket, he ran away.

As the victim was running, defendant chased him, firing eight or nine shots, five of which hit the victim. Hiding in a nearby field, the victim called 911 and reported that he had been shot by a gang member who lived in the apartments. The victim identified

the shooter as the person who bought his Xbox and later identified him by his moniker, "Shaka." In the hospital, the victim picked defendant from a photo lineup.

The victim testified the shooter was "Shaka from Noe Luv," had star tattoos on his face, lived in the apartment complex, and drove a 2001 Mitsubishi. When asked if he could have been mistaken about the identity of the shooter, the victim testified, "No. I'm not mistaken at all. I know who shot me. He knows he shot me. And there shouldn't be nothing else to say."

A gang expert testified defendant was an active member of Noe Luv, a criminal street gang; he had several Noe Luv tattoos; and his moniker was "Shaka."

### B. The Defense Case.

Defendant identified T.H. as an alibi witness. When a detective contacted T.H., she denied knowing defendant even though he was one of her brother's closest friends, both men were members of Noe Luv, and T.H.'s Facebook page listed her name as "[T.] Luuvv." At trial, T.H. testified defendant spent the afternoon of August 20, 2016, with her, buying her shoes, and then sleeping on her couch. A private investigator employed by defense counsel interviewed T.H.; she relayed a story similar to her trial testimony.

Defendant's wife, D.C., provided inconsistent testimony, which she attributed to a faulty memory caused by a car accident, even though she suffered no trauma or head injury in the accident. She testified defendant got off work around noon on August 20, 2016, they ate lunch at Miguelitos' restaurant, and went shopping at a Victorville mall. Defendant left around 7:00 p.m. to visit his mother in San Bernardino, and D.C. did not see him again until the following morning after 9:00 a.m. She knew defendant's

3

nickname was "Shaka," but she initially claimed ignorance of his gang membership. Later, she admitted to knowing he was a member of Noe Luv. D.C. was interviewed by the defense private investigator and provided a story similar to her trial testimony.

Defendant testified he purchased the Xbox from the victim, but they had no conflicts. He admitted to being a Noe Luv gang member from 2000 to 2009, but said he moved to Adelanto to get away from the gang. On October 6, 2016, he was arrested in Phoenix. Defendant identified his tattoos, including a "star" tattoo on his face. He denied shooting the victim, stating he was not home that night; however, he did not identify who he was with or where he had gone. On redirect, he testified that on August 20, 2016, he went to a San Bernardino mall and made purchases with his RushCard[1] from a pizza place, Last Drop liquor store, Arco, Shoe City, and Surf City Squeeze. He refreshed his recollection with his debit card statement.

C.    *Rebuttal Evidence.*

On October 7, 2016, a detective interviewed T.H. T.H. was shown a photograph of defendant, but she denied knowing him. When the detective said defendant had been arrested for attempted murder and had identified her as an alibi witness, she still denied knowing him.

---

[1] "RushCard is a prepaid debit card that can be a convenient alternative to a checking account." (See <https://www.nerdwallet.com/blog/banking/rushcard-prepaid-debit-card-review> [as of Sept. 22, 2020].)

*D.*     *The Verdict and Sentencing.*

On July 8, 2019, a jury convicted defendant of attempted first degree murder and found true the allegations that (1) he personally discharged/used a firearm causing great bodily injury or death (Pen. Code, § 12022.53, subds. (b), (c), (d)); (2) he personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)); and (3) he committed the offense for the benefit of, at the direction of, and in association with a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)).  In a bifurcated proceeding, the trial court found that he had three prior strike convictions (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and three serious felony convictions (Pen. Code, § 667, subd. (a)(1)).  Defendant was sentenced to prison for a total term of 50 years to life, plus 25 years.

## II.  DISCUSSION

*A.*     *Evidence of Defendant's RushCard Statement.*

Defendant contends the trial court abused its discretion and violated his rights to due process and equal protection by excluding purported alibi evidence of his prepaid debit card records.  We disagree.

*1.*     *Further background information.*

Prior to trial, the People moved to exclude evidence of defendant's RushCard statement, which defense counsel planned to introduce "to show the defendant was in San Bernardino when the crime occurred."  The prosecutor objected on the grounds of lack of foundation (Evid. Code,[2] § 1271, subds. (a)-(d)), arguing "without a custodian of record,

_____

[2] All further statutory references are to the Evidence Code unless otherwise indicated.

5

the trustworthiness of the documents cannot be established as required under [section] 1271(d)." Defense counsel explained he had planned to call defendant's wife as a witness to lay the proper foundation because he was unable to contact anyone at the online company. When the court rejected his plan, defense counsel stated he would admit the record through defendant.

During the section 402 hearing, defendant testified he had used his RushCard as his method of payment in conducting financial transactions in 2016. He identified a statement from RushCard, which contained his name and address and pointed out three direct deposits of his paychecks from his employer, United Furniture. He acknowledged the shooting of the victim occurred in the early morning hours of August 21, 2016, and referenced withdrawal transactions that he had made in San Bernardino on the night of August 20 and the morning of August 21. Because the document was a copy of a statement defendant's brother had printed from RushCard's website, the trial court ruled there was insufficient foundation to admit the document. Defense counsel then questioned defendant about his brother's access to the account and request for a copy of the August 2016 statement. On cross-examination, defendant admitted he did not know how the document was made or whether it was made in the regular course of business. He acknowledged the document did not contain the exact "times as to when [the] purchases were made." The prosecutor argued the document should be excluded because there was no subpoena duces tecum, no certification pursuant to section 1271, and no evidentiary foundation establishing admissibility as a business record. The court found

6

insufficient foundation to admit the document and later denied defense counsel's unopposed request for a continuance.

During trial, defense counsel renewed the request to admit the RushCard statement, stating he had obtained a certification from RushCard and a declaration from a custodian of records. The statement listed the transactions for August 20 and 21, 2016, and the times the transactions were processed, along with descriptions and amounts associated with each transaction.[3] Although the time stamps associated with the transactions did not identify the exact time the individual transactions occurred, counsel argued the time discrepancies went to weight, not admissibility. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 262, 266-272 (*Goldsmith*) [discussing authentication of photographs and video generated by an automated traffic enforcement system].) Acknowledging the relevance of the statement as corroborating evidence of defendant's testimony that he was in San Bernardino during the evening of the shooting, the prosecutor argued the statement was unreliable because it failed to state the exact time of each transaction and, thus, failed to "show that the defendant was in San Bernardino when the crime occurred."

---

[3] The relevant transactions listed for August 20, 2016, include: (1) Foot Locker in Victorville for $53.99 with a time of 6:29 p.m.; (2) Inland Center in San Bernardino for $43.50 with a time of 10:20 p.m.; and (3) Miguelitos' restaurant in Adelanto for $50.63 with a time of 10:20 p.m. For August 21, 2016, there are three transactions in San Bernardino with a time of 4:42 a.m.: (1) Surf City Squeeze for $10.09; (2) Arco for $10:35; and (3) Last Drop Liquor for $15.43. There is also one transaction at Sbarro for $8.21 with the time of 4:22 p.m.

7

The trial court accused defense counsel of not being prepared for trial and cited the fact that he had waited until trial to cite the *Goldsmith* case. After reading the decision, the court chastised defense counsel for failing to produce anyone from RushCard to "lay out the business exception to the hearsay rule." In response, defense counsel argued the statement was not hearsay (and not subject to § 1200) because it was computer-generated. Regarding authenticity, he indicated he had provided the prosecutor with "the login and password to the bank's secure system to view these documents [(provided by the bank)] on the bank's system" and, thus, had provided sufficient authentication under sections 1400, 1552, and 1553. The trial court trailed the matter "to a time more convenient to the jury."

After the People rested, defense counsel again sought to introduce the RushCard statement. He asserted he had met the evidentiary requirements, noting the statement came from a secure server, and the People had access to view it on the server. He maintained the statement was not hearsay but, if it was, defendant could testify regarding the transactions contained therein. When asked what the evidence was being offered for, defense counsel replied: "[T]he credit card documents do tend to show that [defendant] was being honest with the detective about having been down the hill making purchases in San Bernardino. So they provide credibility to the statement that he gave the detective." The trial court stated that even if it accepted the defense's interpretation of the Evidence Code, "the problem that I have with it . . . is that the times, these batches that you call, for you to try to show that [defendant] was some place on a certain day, we have no evidence

8

to show how they do the batching."[4]  Later, the court added:  "If your client is truly somewhere else and you're trying to provide the alibi for him, this ain't going to do it. He's really going to need something else, something more concrete, something that's easier to discern, because the document in and of itself fails.  But if he is some place else, I want you to be able to present that evidence.  This just isn't it."  The trial court excluded the statement under section 352.

Defendant testified he did not shoot the victim and was not home on the night of the shooting.  After the prosecutor cross-examined him, defense counsel inquired "whether or not [he could] ask [defendant] about the credit card transactions."  The trial court responded:  "[Defendant] can testify to it, but he can't lay a foundation for that. But if that helps refresh his recollection as to when it was and whatnot, I mean, he can testify to it."  Defendant confirmed his prior testimony that he had used his "Rush card, debit card" to make certain purchases at a mall in San Bernardino on August 20, 2016. He stated that he had reviewed the statement, and the transactions were accurate.  He identified one purchase for pizza with T.H., and others including a purchase in San Bernardino at the Last Drop Liquor store, the Arco station, and Shoe City in the Inland

---

**4** Defense counsel explained batching:  "I know as well from my own credit card machine in my office and in talking with my own bank that they essentially push through the transactions at a certain time.  They come through in what's called a batch.  And so they come through—a company will send all of them, and that's why the times, if you were to look at the Surf City Squeeze, Arco gas station, Last Drop Liquor, and ATM balance inquiries, Sbarro Pizza, all of those transactions show that they occur at 4:42 and zero seconds in the A.M."

9

Center mall.  After reviewing the statement to refresh his memory, he recalled a purchase at Surf City Squeeze.

###    2.    *Exclusion of the evidence.*

Defendant asserts the trial court abused its discretion in refusing to admit his RushCard statement.  He argues the excluded evidence would have shown the jury that his initial statements to the police, along with those of his wife, were "not misstatements," and they, in fact, "backed up several aspects of his story" as well as "what [T.H.] told police."  We find no abuse of discretion.

The admission of a document as a business record requires a foundational showing that:  (1) the writing was made in the regular course of business, (2) the writing was made at or near the time of the act, condition, or event; (3) the custodian or other qualified witness testifies to its identity and mode of preparation; and (4) the sources of information, mode, and method and time of preparation indicate trustworthiness. (§ 1271.)  This showing may be satisfied by affidavit.  (§ 1561.)  "'""Whether a particular business record is admissible as an exception to the hearsay rule . . . depends upon the 'trustworthiness' of such evidence, a determination that must be made, case by case, from the circumstances surrounding the making of the record.  [Citations.]'"  [Citation.]  'The foundation for admitting the record is properly laid if in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.'"  (*People v. Zavala* (2013) 216 Cal.App.4th 242, 246.)  "The proponent of the evidence has the burden of establishing trustworthiness.  [Citations.]  The trial court, however, has '. . . wide discretion in determining whether sufficient foundation is laid to

10

qualify as a business record.'" (*People v. Beeler* (1995) 9 Cal.4th 953, 978 (*Beeler*).) Likewise, the trial court possesses the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

"'On appeal, exercise of that discretion can be overturned only upon a clear showing of abuse.'" (*Beeler*, *supra*, 9 Cal.4th at pp. 978-979; see *People v. Thomas* (2012) 53 Cal.4th 771, 806 [a trial court's exercise of discretion under § 352 will be upheld on appeal unless the court abused its discretion].)

For our purposes, we assume the technical foundation for the RushCard statement was met by the certification and declaration from a RushCard custodian of records in response to the subpoena duces tecum issued by defense counsel. (§ 1271, subds. (a), (c).) We will also assume the statement (a computer-generated printout, introduced as substantive evidence of defendant's transactions on Aug. 20 & 21, 2016) does not constitute hearsay as statutorily defined. (§ 1200, subd. (a) ["'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."]; *Goldsmith*, *supra*, 59 Cal.4th at p. 274 [The "'Evidence Code does not contemplate that a machine can make a statement.'"].) With these assumptions, we find the statement is not a reliable source to establish defendant's location at the time of the shooting. By failing to identify the exact time of each purchase, the statement is insufficient to establish the trustworthiness of the information. (§ 1271, subds. (b), (d).) "The purpose of the

11

evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered." (*Goldsmith*, at p. 267.)

Here, defendant and his wife told officers that he was in San Bernardino on the evening of the shooting. At trial, he testified he was with T.H. that night. The purpose of the RushCard statement was to support his claim. While the statement confirms that purchases were made in San Bernardino on both August 20 and 21, it fails to include the time of each purchase in order to create an accurate time line of defendant's locations. For example, the statement shows a purchase at the Inland Center mall (T.H.'s shoes) in San Bernardino on August 20, 2016, at 10:20 p.m. However, the statement also shows a purchase at Miguelitos' restaurant in Adelanto on August 20, 2016, at 10:20 p.m. Likewise, defendant's purchases at Surf City Squeeze, Arco, and Last Drop Liquor (all in San Bernardino) on August 21, 2016, show the same time of 4:42 a.m. In other words, the statement provides the time that transactions were batched, or processed, not the time the RushCard was used. These inaccuracies undermine the reliability of the statement's information as it relates to defendant's locations. Moreover, no witness explained how transactions were processed or the meaning of the time notations. In short, because the statement lacked trustworthiness, the trial court acted within its discretion in excluding it as unreliable and inadmissible as a business record.

Even if the evidence is admissible under section 1271, a trial court must still determine, pursuant to section 352, whether its probative value is substantially

outweighed by the risk of undue prejudice, confusion, or consumption of time. (*People v. Thompson* (1980) 27 Cal.3d 303, 318, fn. 20 ["The evidence is probative if it is material, relevant, and necessary. '[How] much "probative value" proffered evidence has depends upon the extent to which it tends to prove an issue by logic and reasonable inference (degree of relevancy), the importance of the issue to the case (degree of materiality), and the necessity of proving the issue by means of this particular piece of evidence (degree of necessity).'"].) ""'"Exclusion of evidence as more prejudicial, confusing or distracting than probative, under Evidence Code section 352, is reviewed for abuse of discretion." [Citation.] But "exclusion of evidence that produces only speculative inferences is not an abuse of discretion."'" (*People v. Daniels* (2009) 176 Cal.App.4th 304, 320.) Here, the court did not abuse its discretion in excluding the RushCard statement as minimally probative to establish defendant's locations on the evening of August 20 until the morning of August 21, 2016, because it did not foreclose the possibility of his presence at the shooting.

The probative value of the statement was limited because it lacked the exact times the transactions were made. No witness testified that a specific transaction was made in San Bernardino at or near the time of the shooting, nor was there any testimony the transactions were made at a time that made it impossible or unlikely that defendant was present at the scene of the shooting. Thus, the RushCard statement offered nothing to corroborate the testimony that defendant was in San Bernardino shortly after midnight on August 21, 2016. Absent testimony to explain the meaning of the dates and times of the transactions recorded in the statement, the trial court was rightly concerned that the jury

would be confused, forcing jurors to speculate about the relevance of the evidence. In his reply brief, defendant dismisses the court's concern. He argues "the times accurately reflected the concept of batching," and "myopically [focusing] on just the hour of the shooting" misses "the impact of the omitted evidence on the general testimony of [defendant] and [T.H.] regarding their whereabouts." Specifically, defendant argues the RushCard statement was "highly probative" "to show the jury that his general statements to police regarding his whereabouts were honest and [T.H.] was not lying when she described her interactions with [him]." He maintains that had the evidence been admitted, "the jury may have been inclined to punish the People for not conducting a more thorough investigation, which presumably would have included the collection of video surveillance from the liquor store and the gas station to see what time those purchases occurred, and preservation and analysis of DNA and fingerprints." We are not persuaded by defendant's argument.

Even if we assume the RushCard statement was relevant to support defendant's, his wife's, and T.H.'s credibility, we still conclude the trial court did not abuse its discretion in finding the probative value was substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. "[T]he test for prejudice under Evidence Code section 352 is not whether the evidence in question undermines the defense or helps demonstrate guilt, but is whether the evidence inflames the jurors' emotions, motivating them to use the information, not to evaluate logically the point upon which it is relevant, but to reward or punish the defense because of the jurors' emotional reaction." (*People v. Valdez* (2012) 55 Cal.4th 82, 145.) As defendant asserts,

14

the evidence may have prompted the jury to "punish the People for not conducting a more thorough investigation."  However, evidence that prompts jurors to punish one side is highly prejudicial.  Likewise, the prosecution should not be blamed for failing to collect video surveillance, and preserve and analyze DNA and fingerprints, to disprove a defense, when there was no question of the identity of the shooter until defendant was apprehended on October 6 (some seven weeks after the shooting) and claimed he had been in San Bernardino.

For the above reasons, we find no abuse of discretion in excluding the statement.

### 3. *Violation of constitutional rights.*

Defendant contends "[t]he trial court's ruling that credit card statements can only be introduced if vouched for by a credit card company representative or time-stamped would seemingly disallow the less fortunate, who do not or cannot bank with traditional banks like Bank of America, from being able to introduce evidence to help or exonerate them."  He faults the court's ruling as "fundamentally alter[ing] the rights of the minority underclass" and violating "several constitutional principles."  We find no constitutional violations.

"In general, the '"[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense."  [Citations.]' [Citations.]  We have recognized, however, that Evidence Code section 352 must yield to a defendant's due process right to a fair trial and to the right to present all relevant evidence of *significant* probative value to his or her defense.  [Citation.]  [¶]  Although the complete exclusion of evidence intended to establish an accused's defense may

15

impair his or her right to due process of law, the exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right. [Citation.] Accordingly such a ruling, if erroneous, is 'an error of law merely,' which is governed by the standard of review announced in *People v. Watson* (1956) 46 Cal. 2d 818, 836." (*People v. Cunningham* (2001) 25 Cal.4th 926, 998-999; see *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1317 ["Where a 'trial court's ruling did not constitute a refusal to allow defendant to present a defense, but merely rejected certain evidence concerning the defense,' the ruling does not constitute a violation of due process and the appropriate standard of review is whether it is reasonably probable that the admission of the evidence would have resulted in a verdict more favorable to defendant."].)

Although the trial court's ruling did result in the exclusion of defendant's RushCard statement, "we are not convinced that this evidence was 'critical' to [his] defense or that its exclusion amounted to the exclusion of a defense rather than evidence concerning a defense." (*People v. Espinoza*, *supra*, 95 Cal.App.4th at p. 1317.) The defense was that defendant could not have been the shooter because he was not in Adelanto at the time of the shooting. In support of this defense, witnesses (defendant's wife, T.H., & defendant) testified that defendant left Adelanto on August 20, 2016, for San Bernardino and did not return until the morning of August 21. In the context of this evidence, the RushCard statement was not critical, and its exclusion did not preclude defendant from presenting a defense.

Moreover, defendant "has no constitutional right to present evidence that contains hearsay and is lacking in foundation or other indicia of reliability." (*People v. Williams*

16

(2016) 1 Cal.5th 1166, 1198; see *People v. Stanley* (1995) 10 Cal.4th 764, 839 [videotape recordings that provide no indicia of reliability properly excluded].)  Here, the trial court sustained the prosecution's objections to the RushCard statement on the grounds it was unreliable as a business record and unduly prejudicial under section 352.  At best, the statement supports the claim that defendant was in both Adelanto and San Bernardino on August 20 and 21, 2016; however, it fails to provide defendant with an alibi at the specific time of the shooting because it does not identify the exact time of any purchase made at or around the time of the shooting.

Because the trial court correctly exercised its discretion to exclude the RushCard statement, such exclusion did not violate defendant's constitutional rights.  (*People v. Mills* (2010) 48 Cal.4th 158, 195 [the routine application of state evidentiary law does not implicate a defendant's constitutional rights]; see *People v. Babbitt* (1988) 45 Cal.3d 660, 684 [there is no constitutional right to present irrelevant evidence]; *People v. Shorts* (2017) 9 Cal.App.5th 350, 358-359 ["When a trial court exercises its discretion to exclude evidence and does not abuse that discretion, the exclusion of the evidence . . . does not impermissibly infringe on a defendant's federal constitutional rights."].)

B.      *Denial of Defendant's Request for a Continuance.*

Defendant contends that the trial court abused its discretion in denying his request to continue the trial following its ruling to exclude the RushCard statement for insufficient foundation.  We disagree.

17

### 1. Further background information.

In June 2017, defense counsel informed the court of "potential alibi witnesses." A year later, defense counsel unsuccessfully moved to dismiss all charges on the grounds of "insufficient" identification. And in August 2018, defendant's brother printed a copy of the August 2016 statement, which itemized the RushCard's transactions from August 11 through August 29, 2016, and emailed it to defense counsel's investigator.

On June 25, 2019, the People moved to exclude the RushCard information contained in the email to the defense investigator for lack of foundation. After the trial court found there was insufficient foundation to admit the RushCard information, defense counsel moved to continue the trial to July 19, 2019. The request was denied. The trial court stated: "This is not my trial. I agreed to try it because I was not in trial this week . . . . [¶] . . . [¶] . . . And now you're telling me bump one of my cases for this case because you want a continuance of this kind and I'm not going to do that. So go ahead and make your record, but you know what the answer is going to be." The court later added, "It's too late. We already started."

### 2. Legal principles.

In general, continuances are disfavored in criminal cases. "[A]ll proceedings in criminal cases shall be . . . heard and determined at the earliest possible time. To this end, the Legislature finds that the criminal courts are becoming increasingly congested . . . . Excessive continuances contribute substantially to this congestion . . . ." (Pen. Code, § 1050, subd. (a).) Trial courts, therefore, may grant motions to continue based only on a showing of good cause. (Pen. Code, § 1050, subds. (a), (e).) The court

18

must consider """"not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion."""" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) "A trial court has broad discretion to grant or deny continuances." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 508 (*Mora and Rangel*).) "[D]iscretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*People v. Beames* (2007) 40 Cal.4th 907, 920.) "In determining whether a denial [of a motion to continue] was so arbitrary as to deny due process, the appellate court looks to the circumstances of each case and to the reasons presented for the request." (*People v. Frye* (1998) 18 Cal.4th 894, 1012-1013, overruled on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

      *3.    Analysis.*

It was defendant's burden to demonstrate good cause for a continuance to secure a witness necessary to explain the times identified in the RushCard statement. He was required to "show he exercised due diligence in securing the witness's presence, that the expected testimony was material, noncumulative, and could be secured within a reasonable period of time, and that the facts to which the witness was expected to testify could not otherwise be proven. [Citation.] We accord substantial deference to a trial court's determination of these issues." (*Mora and Rangel*, *supra*, 5 Cal.5th at p. 509.)

Here, there was no showing of diligence. In August 2018, defense counsel received a copy of defendant's August 2016 RushCard statement, which itemized the

transactions of August 20 and 21, 2016. Nearly one year later, on June 25, 2019, counsel announced ready for trial;[5] however, he had not obtained a declaration from a custodian of records or other qualified witness from RushCard to authenticate the statement and explain its contents. Moreover, counsel never contacted the stores or restaurants identified in the statement to obtain their records, showing the times of the transactions. If defendant claimed he was out of town on the night of the shooting, counsel failed to act diligently to obtain evidence to support this claim. (*People v. Riggs* (2008) 44 Cal.4th 248, 296 [denial of continuance was not an abuse of discretion where the defense was not diligent in procuring a witness]; see *People v. Jeffers* (1987) 188 Cal.App.3d 840, 850 ["Where a continuance is requested on the day of trial, the lateness of the request may be a significant factor justifying denial absent compelling circumstances to the contrary."].)

Also, defense counsel failed to establish any likelihood that a continuance would have resulted in the production of a witness or evidence to support the defense. (*People v. Jenkins*, *supra*, 22 Cal.4th at pp. 1037, 1039-1040 [Courts must consider "not only the benefit which the moving party anticipates but also the likelihood that such benefit will result."].) Although the trial was not continued, defense counsel obtained the certification and statement from RushCard in response to a subpoena duces tecum. Nevertheless, the statement remained inadmissible because it was an unreliable source to establish the accurate times of the transactions in order to corroborate the defense.

---

[5] "[T]he trial court is entitled to insist that when a party announces 'ready' for trial, that it actually means ready to proceed." (*People v. Allen* (1996) 49 Cal.App.4th 1507, 1518.)

Moreover, there was no showing that a continuance would have produced different records or other witnesses to establish an accurate time line of defendant's locations. Because defense counsel offered the trial court nothing to evaluate, he failed to establish good cause, and the court acted within its considerable discretion in denying the requested continuance. (*People v. Jenkins*, at pp. 1037, 1039-1040.)

"Nor does *Hughes v. Superior Court* (1980) 106 Cal.App.3d 1 . . . , upon which defendant also relies, support his position. In *Hughes*, the appellate court overturned a contempt order made against a defense attorney who refused to participate in a trial for which he was unprepared. The attorney, a deputy public defender, had been assigned to two cases set for trial on the same Monday. He guessed incorrectly which trial would actually go forward, used the weekend to prepare that case, and then was denied a continuance on the other, unprepared case. [Citation.] The limited record before the appellate court did not indicate why he had announced ready on both cases when he was not prepared on one of them; nor, as far as the appellate opinion reflects, did it indicate whether he had had a significant period of time *prior* to the weekend before trial in order to prepare." (*People v. Snow* (2003) 30 Cal.4th 43, 74.) In this case, defense counsel never indicated he needed more time to prepare for trial or that he was not prepared for trial. Instead, the record shows he was ready to try the case, and he was able to obtain a certification for the RushCard statement in hopes of introducing the document into evidence. However, the facial unreliability of the document precluded its admission.

The trial court did not abuse its discretion in refusing to grant a continuance.

21

C.      *Denial of Effective Assistance of Counsel.*

Defendant contends if we believe defense counsel "should have been prepared with time stamps on the credit card statements and/or a representative from the Rush company," then he was "ineffectively represented by unprepared counsel."  We disagree.

1.      *Legal principles.*

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel."  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).)  To prevail on a claim of ineffective assistance of counsel, a defendant must establish that his counsel's performance was deficient and that he suffered prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms."  (*Id.* at p. 688.)  With respect to prejudice, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Id.* at p. 694.)  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  (*Id.* at p. 697.)

2.      *Analysis.*

According to defendant, because his counsel failed to have the RushCard statement admitted into evidence, counsel was ineffective.  This claim fails on the prejudice prong.  Assuming counsel had persuaded the trial court to admit the statement

22

into evidence, it would have been cumulative to defendant's, his wife's, and T.H.'s testimony placing him in San Bernardino on the evening of August 20 until the morning of August 21 (see *People v. Harris* (1989) 47 Cal.3d 1047, 1092-1093 [erroneous evidentiary ruling was not prejudicial because evidence was cumulative]), and it still would not have provided defendant with an alibi for the time frame of the shooting. The evidence against defendant was strong. When the police responded to the victim's 911 call, he identified defendant as the shooter, explaining the shooter was the person who had purchased his Xbox. Defendant corroborated the victim's testimony by acknowledging his purchase of the Xbox. Accordingly, it is not reasonably probable that the result of the trial would have been different had the statement been admitted.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER_____
                                                                                    J.

We concur:


RAMIREZ_____
            P. J.


FIELDS_____
            J.


23