Filed 6/23/21  P. v. Rowe CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B303972 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA088186) |
| v. | |
| KENNETH LEE ROWE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas Rubinson, Judge.  Affirmed.

Rudolph J. Alejo, under appointment by Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After being robbed at gunpoint, Samuel A. identified two men in a photographic array as his assailants.  One of those men, appellant Kenneth Rowe, was convicted of the robbery.  Rowe now appeals, and argues the trial court prejudicially erred in excluding evidence of the second suspect's cell phone records.  According to Rowe, these records would have shown that the second suspect was not in the vicinity when the crime took place, and therefore, the victim had incorrectly identified that suspect as one of the robbers.  Rowe argues that this incorrect identification would have, in turn, cast doubt on the victim's identification of Rowe.  We conclude the trial court acted within its discretion in excluding this evidence.  We also reject Rowe's claims of ineffective assistance of counsel and instructional error. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    The Robbery

Just after midnight on April 10, 2018, Samuel A. was walking across a residential street when two men approached him and drew handguns.  One of those men, whom the victim would later identify as Rowe, placed his gun about an inch from the victim's forehead and demanded his belongings.  The second man stood a few feet behind Rowe.  The victim handed over his laptop, wallet, phone, watch and bag.  Rowe and his accomplice then walked backward, still aiming their guns at the victim, before jumping into an idling silver car.  As the car drove away, the victim saw the vehicle license plate.  He then reported the crime and the license plate to a 911 operator.

### 2.    The Investigation and Resulting Charges

The police matched the license plate to a silver Nissan registered to Rowe's grandmother.  The police had previously

cited Rowe while he was driving that car. Detectives showed the victim several six-pack photographic arrays, one of which included Rowe's photo. The victim identified Rowe and another man as the robbers. Rowe was charged with one count of robbery (Pen. Code, § 211)[1] with personal use of a firearm (§ 12022.53, subd. (b)). He pled not guilty.

### 3. *Trial*

#### a. *The Prosecution's Case*

The victim testified about the details of the robbery: Rowe stood right in front of him while holding a gun to the victim's head. It took about 30 seconds for the robbers to strip the victim of his belongings. The victim was "pretty confident" he had correctly identified the robbers in the six-packs the police showed to him. When identifying Rowe's accomplice, the victim had written on the six-pack: "This image looks closest to the shorter suspect." However, when cross-examined by defense counsel, he testified that Rowe was actually the shorter of the two.

An LAPD Officer testified that within hours of the robbery he went to the residence associated with the license plate the victim reported. Rowe lived at that house, and the silver Nissan was parked out front. The officer witnessed Rowe exit the house and get into the driver's seat before arresting him. LAPD Detective Peter Barba then executed a search warrant for the Rowe residence and found a handgun behind a sofa.[2]

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     Rowe's prints were not found on the handgun.

b. *Defense Case*

Rowe's girlfriend testified that she was with him at the beach during the time of the robbery. She claimed she had recorded several videos of them together. The videos were played for the jury and depicted timestamps between 12:00 a.m. and 2:00 a.m. on April 10, 2018, which covered the time of the robbery. The defense also called an expert witness who testified generally about eyewitness memory identification.

Rowe proffered the phone records of the second suspect identified by the victim—Jahlil Burgess. Those records tended to show that Burgess's phone was nowhere near the robbery when it took place. The court sustained the prosecution's objection on lack of foundation.

c. *The Prosecution's Rebuttal*

In rebuttal, Detective Barba testified that when he interviewed Rowe's girlfriend the day of the robbery, she claimed not to have seen Rowe in a month. A police license plate reader had also registered a scan of Rowe's car about two miles away from the crime scene at about 2:22 a.m. on the day of the robbery, April 10, 2018. A computer forensic specialist testified that the metadata on the girlfriend's videos was incomplete, and he was unable to determine when the videos were created. He demonstrated how the timestamp displayed on the videos could be fabricated by adjusting the phone's time and date settings.

d. *Judgment*

The jury convicted Rowe as charged and found the firearm enhancement to be true. The court struck the enhancement and sentenced Rowe to the upper term of five years. He timely appealed.

4

## DISCUSSION

### 1. *Exclusion of the Second Suspect's Cell Phone Records*

Rowe argues the trial court prejudicially abused its discretion and violated his right to due process when it excluded the second suspect's cell phone records.

a. *Trial Court Proceedings*

The prosecution initially charged both Rowe and Burgess with robbery. However, when subpoenaed cell phone records showed that Burgess's phone "was pinging off the towers in Palmdale" — far from the vicinity of the crime — the prosecution dismissed the charge against him.

At trial, defense counsel announced her intent to call Burgess's attorney, Tiomkin,[3] as a witness to authenticate the cell phone records and testify that the records indicated Burgess's phone was not close to the scene of the crime at the time of the robbery. Defense counsel argued that this evidence showed the victim misidentified Burgess, which would undermine the reliability of the victim's identification of Rowe as the other robber. The prosecutor objected to the proposed testimony on the ground that Tiomkin was not qualified to lay a foundation for the phone records. The court agreed and denied defense counsel's request to allow Tiomkin to testify for the purpose of authenticating and admitting the phone records. No evidence of Burgess's whereabouts at the time of the robbery or the dismissal of the charge against him was admitted.

---

[3]     The record does not disclose the Tiomkin's first name.

5

b.    *The Trial Court Acted Within Its Discretion in Excluding Tiomkin's Testimony*

The issue before us is whether the trial court erred in concluding that the phone records were not properly authenticated.  At times in his appellate briefing, Rowe paints a broader landscape, suggesting the trial court erred in not allowing evidence of the significance of the phone records, Burgess's location at the time of the robbery, and possible misidentification of Burgess by the victim.  That is not what the trial court did.  The court acknowledged the significance of the line of inquiry.  It sustained the People's objection only on the limited point that the defense could not properly lay a foundation for the introduction of the specific phone records.  The People did not object on grounds of relevancy; nor did the trial court find the evidence irrelevant.

The argument that Rowe actually makes is that the trial court erred in concluding that Tiomkin could not adequately authenticate Burgess's phone records.  According to Rowe, Tiomkin needed only to testify that he had earlier subpoenaed the records and they arrived with the custodian of records' affidavit establishing their authenticity.  Rowe argues he was prejudiced by the court's exclusion of Burgess's phone records because this evidence would have undermined the reliability of both of the victim's identifications.  Respondent argues that defense counsel did not offer evidence the records were in fact accompanied by an affidavit, and the trial court did not err in concluding Tiomkin was not qualified to authenticate the documents.

Evidence Code section 1271 provides an exception to the hearsay rule for business records.  The business records exception

requires a foundational showing that: the writing was made (1) in the regular course of business; (2) at or near the time of the act, condition, or event; (3) the custodian or other qualified witness testifies to its identity and mode of preparation; and (4) the sources of information, mode, and method and time of preparation were such as to indicate its trustworthiness. (Evid. Code, § 1271.) Records obtained by a subpoena may be admitted without live testimony if the records are produced by the custodian of records or other qualified witness, together with an affidavit certifying their authenticity. (Evid. Code, § 1560, subd. (b).) We review for abuse of discretion a trial court's decision as to whether a party has laid a proper foundation for the admission of records under the business records exception to the hearsay rule. (*People v. Zavala* (2013) 216 Cal.App.4th 242, 245–246; *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 319.)

There is no serious dispute that Tiomkin was not qualified to authenticate Burgess's phone records: he was neither a custodian of records nor did he have any direct knowledge of the preparation of these records. Rather, Rowe in essence argues the trial court should have taken Tiomkin's word and assumed that the records were produced with an affidavit by a custodian of records establishing their authenticity. Rowe contends, "When a defendant issues a subpoena for non-party business records, Evidence Code section 1560, subdivision (b) requires the third party to return the requested records to the clerk of the court, along with an affidavit authenticating the reliability of those records pursuant to Evidence Code section 1561." Although Rowe may be correct that when he received the records they were accompanied by the required affidavit, defense counsel did not assert that an affidavit was available and would be provided with

7

the records. Rowe's argument reduces to: Tiomkin received these records; they were good enough to convince the District Attorney to drop the charge against Burgess; so they are good enough to introduce in Rowe's trial. Not surprisingly, nothing in Evidence Code sections 1271 or 1561, nor any authority cited by Rowe supports such a rule.[4] We conclude the trial court acted within its discretion in sustaining the objection that defense counsel had not demonstrated that Tiomkin could adequately authenticate the phone records.[5]

Rowe also argues that the exclusion of Burgess's phone records deprived him of his constitutional right to present a defense. The exclusion of evidence under state evidentiary rules ordinarily does not violate a defendant's due process rights, " 'if the exculpatory value of the excluded evidence is tangential, or cumulative of other evidence admitted at trial . . . .' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 760.) Here, Burgess's

---

[4] Nothing in the record suggests that Rowe's counsel asked for a continuance in order to subpoena Burgess's phone records. On the contrary, during colloquy among court and counsel, Rowe's counsel said, "I have no way of introducing evidence regarding the former codefendant's cell phone information."

[5] Rowe does not discuss that determining the general location of a cell phone at the time of a particular call based on historical cell site data is a proper subject of expert testimony. (See, e.g., *People v. Garlinger* (2016) 247 Cal.App.4th 1185, 1192 [the trial court accepted a detective as an expert in cell phone data analysis, allowing the detective to testify as to the "vicinity of the phone," when the detective had attended training on "cell phone record analysis," had analyzed call detail records at least 40 times, and had testified as an expert on call detail records in 4 cases].) Tiomkin was not qualified as an expert.

phone records were tangential to Rowe's defense. Rowe's primary defense was his girlfriend's alibi evidence. If the jury had believed the alibi defense, it would have undoubtedly found Rowe not guilty and the claimed misidentification of Burgess would have been beside the point. Even without the phone records, defense counsel was still able to challenge the victim's identification of him based on inconsistencies in the victim's descriptions of the suspects — for example, defense counsel questioned the victim about his claim that the two suspects looked similar and about the victim's initial description of Rowe as the taller robber and subsequent concession that Rowe was the shorter robber. (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1325 [the trial court's ruling did not deny defendant's right to present a defense, but merely rejected certain evidence concerning the defense].) The exclusion of this evidence did not deprive Rowe of the ability to present a defense.

## 2. *Ineffective Assistance of Counsel*

Rowe contends that counsel rendered ineffective assistance by eliciting testimony from the victim about his identification of a second suspect once the trial court had ruled that Burgess's phone records would be inadmissible. Respondent argues that counsel had a tactical reason for her actions, and there was no prejudice. Thus, Rowe failed to establish either of the two elements of ineffective assistance of counsel.

A " 'defendant claiming a violation of the federal constitutional right to effective assistance of counsel must satisfy a two-pronged showing: that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' [Citations.]" (*People v.*

9

*Woodruff* (2018) 5 Cal.5th 697, 736.) We presume "that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." (*In re Long* (2020) 10 Cal.5th 764, 773.) "Whether counsel's performance was deficient, and whether any deficiency prejudiced defendant, are mixed questions of law and fact subject to our independent review." (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)

Here, although Rowe contends that defense counsel "could have no tactical reason" for introducing the second identification "without ensuring she would be able to prove that second identification was false," the record shows the opposite. Counsel sought to challenge the victim's reliability as an eyewitness. Counsel told the trial court that, while she understood that she was not allowed to introduce "the former codefendant's cell phone information," she still intended to question the victim

> "about his identification of the two people he claimed robbed him." The victim had made "mistakes from the very beginning" regarding his identifications, and "that's relevant to [the] argument, that this person identifying Mr. Rowe picked the wrong person." "[T]here are two people that come at [the victim] with guns and he gives descriptions of what they are wearing, he gives descriptions of their height . . . and those change over time."

Counsel then proceeded to challenge the victim's testimony that the two suspects "looked alike." Counsel invited the jury to consider the two photos of the suspects the victim circled in the six-packs, and argued the suspects did not look alike, and the victim had not accurately identified the suspects. We cannot say on this record that counsel's decision to elicit testimony about the identification of a second suspect was ineffective assistance.

### 3.    *CALCRIM No. 315*

Rowe argues the trial court erred in instructing the jury with CALCRIM No. 315 on eyewitness identification evidence. This instruction directs the jury to consider, among other things, "how certain" an eyewitness was when he "made an identification." Rowe contends the error violated his state and federal constitutional right to due process, citing to case law noting that scientific studies have found "a weak correlation between witness certainty and accuracy . . . ." (See *People v. Sanchez* (2016) 63 Cal.4th 411, 462 (*Sanchez*).)

Rowe did not object to the instruction or request that the trial court modify CALCRIM No. 315 to remove the challenged language. The Attorney General argues Rowe has forfeited this claim. (See *Sanchez, supra*, 63 Cal.4th at p. 461 ["If defendant had wanted the court to modify the instruction, he should have requested it. The trial court has no sua sponte duty to do so."]; see also *People v. Rodriguez* (2019) 40 Cal.App.5th 194, 199–200 ["Rodriguez argues CALCRIM No. 315 violates his Fourteenth Amendment due process rights because it tells the jury to consider eyewitness certainty. Rodriguez's counsel did not object at trial. This is forfeiture."].)

Rowe argues there was no forfeiture because it would have been futile to object before the trial court. (See *People v. Gomez* (2018) 6 Cal.5th 243, 286–287 ["Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile . . . ."].)

At the time of trial in this case, the Supreme Court had upheld the inclusion of the certainty factor in CALJIC No. 2.92,

the predecessor to CALCRIM No. 315.[6] (*Sanchez, supra,* 63 Cal.4th at p. 462; *People v. Rangel* (2016) 62 Cal.4th 1192, 1215 [no forfeiture where the governing law at the time of trial "afforded scant grounds for objection."].) However, the question of the continued inclusion of the certainty of eyewitness identification in CALCRIM 315 had been pending before our Supreme Court for over a year before trial in this case. The issue remained pending at the time of trial. (See *People v. Lemcke* (June 21, 2018, G054241) [nonpub. opn.], review granted Oct. 10, 2018, S250108.).) Under these circumstances, we conclude Rowe forfeited the argument by not objecting.[7]

---

[6] Although the Supreme Court analyzed CALJIC No. 2.92, it cited to similar language used in CALCRIM No. 315. (See *Sanchez, supra,* 63 Cal.4th at p. 461.)

[7] While this appeal was pending, the Supreme Court filed its opinion in *People v. Lemcke,* holding that CALCRIM No. 315 did not violate the defendant's due process rights despite empirical research showing that confidence in a witness identification is generally not a reliable indicator of accuracy. (*People v. Lemcke* (2021) 11 Cal.5th 644.) However, the Court recognized the risk that the instruction "will prompt jurors to infer that an eyewitness's certainty in an identification is generally a reliable indicator of accuracy." (*Id.* at p. 680.) Accordingly, utilizing its supervisory powers, the Court directed that, except when a defendant asks for the instruction, "trial courts to omit the certainty factor from CALCRIM No. 315 until the Judicial Council has the opportunity to consider how the language might be better worded to minimize juror confusion on this point." (*Ibid.*)

### 4. *Cumulative Error*

Rowe contends his conviction must be reversed for cumulative error.  Because we have found no error, there are no errors to accumulate.  (*People v. Reed* (2018) 4 Cal.5th 989, 1018.)

### DISPOSITION

The judgment is affirmed.


                                                    RUBIN, P. J.

WE CONCUR:


        BAKER, J.


        KIM, J.